## Manheim Insurance Co. v. Tyner.
## Alliance Insurance Co. v. Tyner.
## The Sea Insurance Co. of Liverpool, Eng. v. Tyner.

(Decided February 2, 1911.)

### Appeals from McCracken Circuit Court.

1. Insurance—Marine Insurance—Unseaworthy Vessel—Conditions in Policy—Waiver.—The steamer "Gracy Childers" had three insurance policies against loss by fire, "whenever she is in safety and in a seaworthy condition," the policies containing this additional clause: "This policy shall be null and void while said vessel shall be unseaworthy except while proceeding to a port for repairs." Also this warranty: "and that at all times at least two competent watchmen shall be employed, one of whom shall be on duty all the time." It is admitted that the steamer was unseaworthy and had been condemned by the U. S. Inspectors, in March, 1909.. On application of the insurance companies to cancel the policies, the owners replied: "That they had determined to have the vessel repaired either at Paducah, Ky., or Mound City, Ill., and will begin the work in the next few days, as soon as we can arrange with the officials, therefore we desire to let the policies remain in force." To this letter appellants responded on March 10, 1910: "We learn from your favor of the 9th inst. that it is your intention to have the steamer Gracy Childers docked and all necessary repairs made within the next few days, either at Paducah, Ky., or Mound City, Ill. Agreeable to your request we will continue to allow the policies to remain in force." A fire occurred on June 16th, 1909, by which the vessel was slightly damaged. The insurers paid the loss, $57.80. The steamer burned at Paducah, September 3rd, 1909.

2. Waiver—Absence of Watchman.—Held. (1) That if it be conceded that appellants knew on June 16th, 1909, that the steamer had been repaired and was then out of commission it was in no sense a waiver of the condition in the policy as to the future, and no agreement to waive indefinitely the seaworthy clause. (2) There were not two watchmen employed as required, nor was one watchman kept in duty all the time. Upon the facts disclosed the judgment should have been for defendants.

CHARLES H. STEPHENS, STEPHENS, LINCOLN & STEPHENS, and J. D. MOCQUOT for appellants.

HENDRICK & CORBETT for appellee.

Opinion of the Court by Judge O'Rear—Reversing.

These cases involve the liability of the appellants as insurers upon policies of marine insurance issued by them respectively upon the steamer "Gracy Childers," a steamboat navigating the Ohio river.

During the term covered by the policies the steamer was totally destroyed by fire on September 3, 1909, while lying at the wharf in the city of Paducah, Ky.

Each policy insured the steamer Gracy Childers against loss by fire ''wherever she is in safety and in a seaworthy condition,'' the policies containing this additional clause:

''This policy shall be null and void while said vessel shall be unseaworthy, except while proceeding to a port for repairs, and during the time of said repairs.''

Also this warranty: ''And that at all times at least two competent watchmen shall be employed, one of whom shall be on duty at all times.''

That the vessel was unseaworthy and had been laid up for about seven months is admitted. She was condemned by inspectors of the United States in March, 1909. The owners then applied to appellants to cancel the policies and return premium notes. They answered assenting to the cancellation and asked that the policies be returned to them for that purpose. The owners replied that they had determined to have the vessel repaired either at Paducah, Ky., or Mound City, Ill., ''and will begin this work in the next few days, as soon as we can arrange with the proper officials. Therefore, we deside to let the policies continue in force.'' To this letter appellants responded on March 10, 1909:

''We note from your favor of the 9th inst. that it is your intention to have the steamer Gracy Childers docked, and all necessary repairs made within the next few days, either at Paducah, Ky., or Mound City, Ill. Agreeable to your request we will continue to allow the policies to remain in force.''

A fire occurred on June 16, 1909, by which the vessel was slightly damaged. The insurers paid the loss, amounting to $57.81. It does not appear that at that time the insurers were apprised that the repairs had not been made, or that the vessel was not being repaired, or was still out of commission. The incident of the payment of this loss is pleaded by appellee as a waiver by appellants of the clause relating to seaworthiness. It may have been a waiver as to the loss occasioned June 16, 1909. But, if it be conceded that appellants then knew that the vessel had not been repaired, and was out of commission at that time, it was in no sense a waiver of the condition in the policy as to the future. Nor do the letters constitute a waiver except when the terms

stated in them, which was for a few days, while she was undergoing repairs. The correspondence shows no agreement on the part of the insurers to waive indefinitely the seaworthy clause. Just the contrary is evinced.

The warranty clause as to watchmen was also breached by appellee. There were not two watchmen employed. He sublet, by consent of the owner's agent, a part of the duties of watchman to his son, and they alternated in looking after her. But the employed watchman had undertaken other work which took his time from 8:30 a. m. till 5 o'clock p. m. of each day. His son would stand watch during the day and sleep on the vessel at night. When both would be absent they would arrange with a watchman on some neighboring gasoline yachts to keep an eye on the vessel for them. On the occasion of the fire there was not any one on the vessel. The watchman had gone to his supper, some four or five squares away. Upon leaving he spoke to the neighboring watchman to keep a lookout on the vessel. The latter did not undertake to go on the vessel, or to take any other oversight than a casual observation from his position and post of duty on the other craft, some forty or fifty feet away. He was neither employed or obligated to look after the vessel, and as a matter of fact was not in a position at any time to give her the care that a watchman was employed to do. He was not a watchman on this vessel at all, and was not employed as such. Thus we see that both requirements of the warranty were broken; there were not two watchmen employed, nor was one watchman kept on duty at all time. The purpose of requiring that two watchmen should be employed was that when one was called away to his meals, or was asleep, the other might be on duty. It was agreed that one should be on duty. The very purpose of requiring such care is illustrated well by what occurred. For if one watchman had been on duty at that time he probably would have discovered the fire before it made much headway and have had an opportunity to extinguish it.

Upon the facts disclosed the judgment should have been for the defendants.

Reversed and remanded for proceedings consistent herewith.