CAMDEN COUNTY CIRCUIT COURT.

LEON G. BUCKWALTER, RECEIVER OF GLOUCESTER FERRY COMPANY, PLAINTIFF, v. AETNA INSURANCE COMPANY, DEFENDANT.

LEON G. BUCKWALTER, RECEIVER OF GLOUCESTER FERRY COMPANY, PLAINTIFF, v. GLOBE AND RUTGERS FIRE INSURANCE COMPANY, DEFENDANT.

Decided May 4, 1928.

For the plaintiff, *Curry & Purnell*.

For the defendants, *McDermott, Enright & Carpenter* (*James D. Carpenter, Jr*).

DONGES, J. These two cases have been submitted on stipulations. The facts in both cases are identical.

The facts, as stipulated, are that the defendants issued marine policies on the ferryboat "Dauntless," of the Gloucester Ferry Company, which, among other things, covered loss by fire. For approximately two weeks prior to October 13th, 1922, the "Dauntless" had been undergoing repairs while moored to the company's wharf adjoining its ferry slips at Gloucester city. The repairs had been completed during that day and the boat was ready for service. There were no fires under the boilers, nor was there any crew on board. At about eleven-thirty P. M., on October 13th, fire was discovered on the boat. An alarm was given, and the Gloucester city fire department responded, but was unable to render assistance because the moorings of the boat had been burned and the tide caused the ferryboat to drift away from the wharf. The boat drifted to the Pennsylvania side of the river, where she was completely destroyed. The admitted facts are that the ferry company employed one Samuel Pine, whose duties were to sweep out the ferryhouse, to assist in docking and tapping out the ferryboats from the ferry terminal, to make rounds of all the company's property, including the ferry house and any vessels moored at the company's several docks, and to perform other general duties about the ferry house at the Gloucester terminal. At about ten-thirty o'clock on the night in question, Pine, in the course of his rounds, went aboard the "Dauntless" and saw no signs of either smoke or fire. He then went into the ferry terminal and began

sweeping, at the same time conversing with police officer Prickett, of the Gloucester city police department. About eleven o'clock another boat, the "Fearless," came into the terminal from Philadelphia, and Pine went out on the bridge to make the boat fast. After the teams and passengers had been discharged, the "Fearless" took on passengers and teams and Mr. Pine tapped the "Fearless" off and she proceeded to Philadelphia. At about eleven-thirty, Officer Pricket and Pine·went from the ferry house to the street, when they noticed that the "Dauntless" was on fire.

The defense in each case is that the Gloucester Ferry Company breached the warranty in each policy that the vessel insured should at all times during the continuance of the policy have a competent watchman on board. This warranty is in the following terms:

"Warranted by the insured that the said vessel shall at all times during the continuance of this policy be tight and well found in anchors, cable, rigging, tackle and apparel, as is usual and customary; also in all other things and means necessary and proper for safe navigation according to the usage and custom; that she shall at all times have a competent watchman on board, and that whenever said vessel shall lie at anchor in the night time, she shall show one or more lights in a conspicuous place so as to warn and give notice to approaching vessels."

Plaintiffs assert that inasmuch as Pine was engaged, among other things, to make inspection of all the property of the ferry company, that there was a substantial compliance with the terms of the policy, and that it is immaterial whether the watchman was on board at all times and that it is sufficient if periodic·inspection of the property was made.

In 1 *Arn. Ins.* (11th ed.) § 531, the rule is stated:

"In the case of a warranty, all questions of the materiality or immateriality of the fact warranted are entirely excluded; the sole inquiry is whether it be or be not warranted that the fact is or shall be so and so. If it be warranted, then, however unimportant the fact may be to the risk, however little its existence or non-existence may have influenced the judgment of the underwriter as to the rate of premium, the thing

warranted must be absolutely true or literally performed; otherwise, the policy will be void as from the date of the breach of the warranty."

The warranty in question has been construed a number of times in the admiralty courts, and in every instance that I have been able to discover, a strict compliance with the warranty has been sustained. *Snyder* v. *Home Insurance Co.,* 133 *Fed. Rep.* 848; *affirmed,* 148 *Id.* 1021; *Whealton Packing Co.* v. *Aetna Insurance Co.,* 185 *Id.* 108; *Shamrock Towing Co.* v. *American Insurance Co.,* 9 *Id.* (2d ed.) 57; *Manheim Insurance Co.* v. *Tyner,* 133 *S. W. Rep.* 1000.

The admitted facts in this case being that there was no watchman on board at all times and that the duty of watching this boat was a very small part of the duties of the person who did visit it at intervals, I am of the opinion that the warranty in question was breached and that the plaintiff cannot recover.

Plaintiff has cited a number of cases in which policies of fire insurance required that a watchman should be in service, and in which cases a recovery was permitted, notwithstanding the watchman was not at the time of fire actually on the insured premises. In *Sierra Milling, Smelting and Mining Co.* v. *Hartford Fire Insurance Co.,* 18 *Pac. Rep.* 267, it appeared that a watchman was engaged to be upon the premises at all times of the day and night and that he was in and about the premises, although at the time of the discovery of the fire he was sixty feet from the insured premises, but at a point where his view of the insured property was better than on the property. On the issue framed in that case, the court sustained a recovery by plaintiff.

In the cases of *Hanover Fire Insurance Co.* v. *Gustin,* 59 *N. W. Rep.* 375, and *Spies* v. *Greenwich Insurance Co.,* 56 *Id.* 560, recoveries by the plaintiffs were sustained because of the peculiar issues framed in those cases. In none of these cases is the precise question raised that we have to meet here. Here the issue is square-cut, and we are called upon to determine whether the warranty imposes a duty upon the assured to have a watchman on board the insured premises at all times.

774

We are not called upon to determine whether the absence of the watchman contributed to the loss. The warranty is clear and definite. Has it been performed? The facts show that it has not.

As was said by Chief Justice Whelpley, speaking for the Supreme Court in *School Trustees* v. *Bennett, 27 N. J. L.* 513:

"No rule of law is more firmly established by a long train of decisions than this, that when a party, by his own contract, creates a duty or charge upon himself, he is bound to make it good if he may, notwithstanding any accident or inevitable necessity because he might have provided against it by his contract."

And, in *Kupfersmith* v. *Delaware Insurance Co., 84 N. J. L.* 271, Chief Justice Gummere, speaking for the Court of Errors and Appeals, said:

"The law will not make a better contract for parties than they themselves have seen fit to enter into, or alter a contract for the benefit of one party and to the detriment of the other. The judicial function of a court of law is to enforce a contract as it is written."

I find, as a matter of fact, that plaintiff breached the warranty in question, and that defendants are entitled to judgment.