ANNA E. SEEGER, Appellee, v. JAMES F. MANIFOLD et al., Defendants; JOHN W. EDWARDS, Appellant.

No. 40166.

684

June 23, 1930.

*Ferguson & Ferguson,* for John W. Edwards, appellant.

*Ritchie, Chase, Canaday & Swenson,* for Anna E. Seeger, appellee.

*Stephens & Thornell,* for Merrill H. Manifold, Florence D. Manifold, James F. Manifold, and Eva Manifold, appellees.

WAGNER, J.—On March 1, 1925, the defendants Manifold executed unto the plaintiff their promissory note in the principal sum of $11,000, payable in installments as follows: $1,000 March 1, 1926, and $10,000 on March 1, 1930. The in-debtedness drew interest at 6 per cent. To secure the payment of the same they executed a trust deed upon a quarter section of real estate owned by them in DeKalb County, Missouri. By reason of acceleration clauses contained in the note and trust deed, the principal became due for lack of required payments, and on June 23, 1928, the real estate was sold

on foreclosure, as provided by the laws of the state of Missouri. After the sale of the Missouri real estate, there remained a deficiency due the plaintiff, and this action is brought to recover the amount of said deficiency.

The defendant John W. Edwards is the father of Cecil L. Edwards and Arthur P. Edwards. The two boys are named as parties defendant, but, being nonresidents, they were not served with notice, and were not present at the trial, nor were depositions taken. Prior to the time of the execution of the written contract hereinafter referred to, the two boys, said by the father to be the owners of a "candy kitchen" in Shenandoah, were operating it under the name "Edwards Brothers." The Missouri farm was owned by two brothers, Merrill H. and James F. Manifold. The Manifolds, through Merrill H., listed the farm with a real estate agent, Racine, for sale or exchange. Negotiations were entered into, looking toward an exchange of the candy kitchen for the Missouri farm. These negotiations were between Merrill H. Manifold, on the one hand, and John W. Edwards and his two sons, on the other. The father and sons inspected the Missouri farm, and thereafter, on May 13, 1925, the three Edwardses, Merrill H. Manifold, and Maier,—a disinterested party,—met in Racine's office in Shenandoah, where an agreement relative to an exchange was reached. All of said parties immediately went to the Shenandoah National Bank, for the purpose of having Lake, the cashier of said institution, draw a contract, incorporating therein the terms of their oral agreement. A contract was prepared by Lake for the exchange of the candy kitchen for the Missouri farm, and was duly signed by the parties, the signature of parties of the second part appearing thereon "J. W. Edwards & Sons," and having been so signed by the appellant. The contract provides that the lease on the farm was to be assigned to J. W. Edwards & Sons; that Manifold was to assume the lease for the candy kitchen property; and that possession of the candy kitchen was to be given at the beginning of business on May 14, 1925. Immediately following the description of the Missouri farm is the following assumption clause:

"Subject to a first mortgage of $11,000.00 with 6% interest from March 1, 1925; and a second mortgage for $1,000.00 with

interest at 6% from March 1, 1925, which second parties assume and agree to pay as part of the consideration herein;''

This assumption clause affords the bone of contention as among the parties. It is undisputed that the amount of the indebtedness secured by the trust deed is $11,000.

The plaintiff alleges in her petition that, by the terms of said contract, the said defendants John W. Edwards, Cecil L. Edwards, and Arthur P. Edwards assumed and agreed to pay the indebtedness of the Manifolds to the plaintiff evidenced by the note and trust deed. This allegation is admitted by appellant's sworn answer, with the modification that he was to assume and pay only the sum of $1,000 of said indebtedness, which he therein alleges that he has paid, and that the scrivener was instructed to draw the contract accordingly. The trial court found against the defendant John W. Edwards, and entered judgment against him in favor of the plaintiff for the deficiency.

It is apparent that the controversy, as among the parties, must depend upon the construction of the written contract. Whatever ambiguity there may be in the aforesaid assumption  clause, the same arises because of the semicolon immediately after the figures 1925. According to Webster's International Dictionary, the proper use of the semicolon indicates a separation between parts or members of a sentence more distinct than that marked by a comma. While punctuation of a contract may assist, yet, ordinarily, it is of little aid in construing it. *Ewing v. Burnet,* 11 Pet. (U. S.)* 41 (9 L. Ed. 624); *Holmes v. Phenix Ins. Co.,* 39 C. C. A. 45 (98 Fed. 240, 47 L. R. A. 308); *Skamania Boom Co. v. Youmans,* 64 Wash. 94 (116 Pac. 645); *Stoddart v. Golden,* 179 Cal. 663 (178 Pac. 707); *Zantow v. Old Line Acc. Ins. Co.,* 104 Neb. 655 (178 N. W. 507); *Richardson v. Venn,* 84 Ill. App. 601; 13 Corpus Juris 535. In *Ewing v. Burnet,* 11 Pet. (U. S.) *41 (9 L. Ed. 624), the Supreme Court of the United States declared:

''Punctuation is a most fallible standard by which to interpret a writing; it may be resorted to when all other means fail, but the court will first take the instrument by its four corners, in order to ascertain its true meaning * * *.''

In *Holmes v. Phenix Ins. Co.*, 39 C. C. A. 45 (98 Fed. 240, 47 L. R. A. 308), we find the following pronouncement:

"But in a contract, the words, and not the punctuation, are the controlling guide in its construction. Punctuation is no part of the English language. The Supreme Court says that it 'is a most fallible guide by which to interpret a writing.' *Ewing's Lessee v. Burnet*, 11 Pet. 41, 54, 9 L. Ed. 624. The Century Dictionary tells us, what is common knowledge, that 'there is still much uncertainty and arbitrariness in punctuation.' It is always subordinate to the text, and is never allowed to control its meaning."

In *Stoddart v. Golden*, 179 Cal. 663 (178 Pac. 707), in the consideration of a similar proposition, the court declared:

"If, instead of the semicolons used in the note, commas had been used, we think there could not have been a suggestion that any of the installments were to run without interest; or, if the first semicolon had been used, and, in place of the second and third semicolons, commas, then we think no suggestion of the kind could be made."

In *Richardson v. Venn*, 84 Ill. App. 601, there was considered the following assumption clause:

"Subject to a trust deed dated March 13, 1893, to Paul O. Stensland, securing payment of twenty-two hundred dollars ($2,200), due five (5) years after date; also to all taxes subsequent to the year 1895, which party of the second part hereby assumes and agrees to pay as part of the purchase price of the above described premises."

The court held, on conflicting testimony as to the intention of the parties, that the semicolon had no effect in determining which of the incumbrances the assumption clause covered; and that the indebtedness secured by the trust deed was assumed, although what is said about said indebtedness is separated from the remainder of the assumption clause by a semicolon.

Immediately after the execution of the aforesaid contract, a deed was also prepared, in which the two Edwards boys were named as grantees. Manifold testifies that this was at the suggestion of the appellant, he saying that he was turning the farm

over to the boys, as he was too old to handle it. This testimony is not denied by the appellant. There is no claim by the appellant in his pleadings that he was released from liability by reason of the execution of the deed in which only the boys were named as grantees. Under the circumstances, as disclosed by the record, the fact that he was not named in the deed would not release him from liability by reason of the assumption clause in the contract. See *Shult v. Doyle*, 200 Iowa 1; *Senninger v. Rowley*, 138 Iowa 617; 19 Ruling Case Law 381. The deed was then and there signed and acknowledged before Lake, as a notary public, by Merrill H. Manifold and his wife, and then sent to Colorado, for the signatures and acknowledgments of James F. Manifold and his wife. The assumption clause in the deed is as follows:

"Subject to a first mortgage of $11,000.00 and 6% interest thereon from March 1, 1925 and a second mortgage for $1,000.00 with 6% interest from March 1, 1925 which grantees assume and agree to pay as part of the purchase price herein."

It will be observed that, whereas a semicolon is used in the assumption clause in the contract, it is omitted in the assumption clause in the deed, which fact will be hereinafter considered.

It is a well recognized rule of law that two instruments made contemporaneously should be construed together in determining the meaning. *Leathers v. Geitz*, 135 Iowa 145; *Barnett v. Lovejoy*, 193 Iowa 678; *Elmore v. Higgins*, 20 Iowa  250. It is also a well recognized rule of law that, when the terms of a contract are ambiguous, then it is proper to look to the conversations, statements, circumstances, negotiations, and conduct of the parties, as an auxiliary to the construction to be placed upon same. *Cedar Rapids Sav. Bank & Tr. Co. v. American Mtg. & Sec. Co.*, 208 Iowa 150; *Tucker v. Leise*, 201 Iowa 48; *Rath v. Schoon*, 192 Iowa 180; *Chamberlain v. Brown*, 141 Iowa 540; *Kelly & Mahon v. Fejervary*, 111 Iowa 693.

It is undisputed that the appellant, as well as his two boys, negotiated with Manifold relative to the exchange of the Missouri farm for the candy kitchen. The appellant was informed of the $11,000 indebtedness. He collected the rents and profits from

the farm, but, as he claims, this was done for his two boys. He paid the interest due for two years. The plaintiff testifies that he paid $1,000 upon the principal. The appellant testifies that he has no recollection of paying her $1,000. It should be remembered at this point that the appellant admits, in his verified answer to the petition, that he paid $1,000 upon said indebtedness. Not getting her interest, which was due on March 1, 1928, the plaintiff communicated with appellant by telephone, and he informed her that the interest would be paid in a few days; but, not receiving the same, she came to Shenandoah, and in the interview with him, he then informed her that he had sold the land, and was no longer responsible, saying: "You know, while I was responsible for it [the interest], you always got it promptly." The appellant, upon his examination as a witness, admits that the plaintiff's version of the conversation is substantially correct.

Relative to the negotiations in the office of the real estate agent, prior to the time of the preparation of the contract, Manifold testified that they there agreed that he was to assume the lease upon the candy kitchen, and the appellant and his two boys were to assume the payment of the $11,000 indebtedness. In this he is corroborated by Maier. Relative to the conversation, the appellant testified, on direct examination:

"The talk was between Merrill Manifold, myself, and the two boys, and we all four talked about it. We were all talking about it, and Manifold said, 'If you folks will assume the deal or the mortgage on this land, I will trade, and assume the lease on the candy kitchen.' Q. What did you say to him? A. I said I supposed we would. Q. Assume the whole debt,—you mean you were to assume the $11,000? A. Not me,—the boys. I said I would stand good for $1,000."

Relative to what transpired in the presence of the scrivener, the testimony is in hopeless confusion and irreconcilable conflict. Manifold, corroborated by Maier, testified that he told the scrivener that they, the Edwardses, would assume and agree to pay the indebtedness of $11,000.

We have read and reread the testimony of the appellant with care, and the various portions thereof will not harmonize, and are in conflict. The testimony of the scrivener is not much more

satisfactory. He testified, in substance, that he was told there was a first mortgage of $11,000 against the land, and a second mortgage of $1,000, and that the appellant was to assume the $1,000. Without objection, he further testified that his purpose in using the semicolon in the aforesaid assumption clause in the contract was to segregate the $11,000 payment from the $1,000. As we view it, this testimony by the scrivener is of little consequence. We have before us the contract prepared by the scrivener, and an inspection thereof in its entirety fails to reveal expert knowledge by the scrivener relative to punctuation.

It will be observed that the language used in the assumption clause of the contract and deed are almost identical, but that the semicolon used in the contract is omitted in the deed. There can be no question as to the assumption of the $11,000 in the deed. The parties of the second part in the contract are J. W. Edwards and sons. If, under the contract, the appellant did not assume the payment of the $11,000, neither did the sons; and if appellant's contention be correct, then the deed fixes liability upon the two sons, contrary to the terms of the contract.

Applying to the facts the rule of law that punctuation is a most fallible standard by which to interpret a contract, and that the words, and not the punctuation, are the controlling guide in its construction, and after considering all of the testimony disclosed by the record, we agree with the conclusion reached by the trial court.

The cause was fully submitted to the court on the 21st day of March, 1929. Some weeks later, the appellant filed a motion to set aside the submission, and for leave to introduce testimony of an additional witness, which motion was overruled. The claimed additional testimony was only cumulative. There is no sufficient showing of diligence in procuring the claimed testimony before the final submission of the case. The appellant, in his argument, concedes that the opening of the case is discretionary with the trial court. Suffice it to say that there was no abuse of discretion in the court's ruling.

It is apparent from the entire record that the judgment of

the trial court is correct, and the same is hereby affirmed.—*Affirmed*.

MORLING, C. J., and EVANS, FAVILLE, DE GRAFF, ALBERT, KINDIG, and GRIMM, JJ., concur.