HOWARD RANDOLPH, appellee, v. FIREMAN'S FUND INSURANCE COMPANY and WILLIAM C. BATES, appellants.

No. 51040.

(Reported in 124 N.W.2d 528)

944

November 12, 1963.

John Paul Jones and W. C. Hoffmann, both of Des Moines, for appellant.

Frank Thompson of Batchelet & Thompson, of Guthrie Center, and Clyde Putnam, Jr., of Putnam, Putnam & Putnam, of Des Moines, for appellee.

Thompson, J.—Again we have a controversy between an insurance carrier and its insured as to the meaning and extent of coverage of a written contract of insurance. The issuance of the policy and that it was in force and effect at all material times is not in dispute. The plaintiff contends that the policy covered liability, to the extent of the stated amount, for an injury sustained by a farm employee of the plaintiff, as a result of which the employee claims damages from the plaintiff in an action pending at the time of the trial of this case. The defendant asserts the contract does not cover the injury and the plaintiff's liability therefor. It refused to defend the employee's suit, and

this action for a declaratory judgment asking that it be decreed to be compelled to defend the suit and pay any damages assessed therein against the plaintiff to the extent of its stated coverage, $20,000, was brought. Trial resulted in a decree for the plaintiff as prayed, and we have this appeal.

The trial court was of the opinion that the provisions of the policy regarding coverage of farm employees were ambiguous, and under the familiar rule that in such cases the policy is to be construed against the insurer and in favor of the insured held that the defendant must appear and defend the suit brought against the plaintiff by a farm employee and respond to the extent of its stated liability coverage for any damages assessed against the plaintiff. The court also applied another well settled principle, that when ambiguity of a contract appears parol evidence may be admitted to ascertain the true meaning of the contract. Neither of these rules can be in real dispute, and citation of authorities would be a waste of time and paper. But neither of them comes into play unless it may fairly be said there is a real ambiguity in the terms of the policy. Field v. Southern Surety Co., 211 Iowa 1239, 1242, 235 N.W. 571, 572; Mallinger v. State Farm Mutual Automobile Ins. Co., 253 Iowa 222, 226, 111 N.W.2d 647, 649.

I. We turn then to the provisions of the policy. It was what was known as a Farmer's Comprehensive Personal Liability Policy. As is customary now, it stated the different coverages, with the limits of liability and the premium to be paid for each set in opposite columns. Thus, Coverage A stated the limits of liability as $20,000; Coverage B, medical payments, as $500; and the combined premium for the two as $81.97. The same system was used as to other coverages with which we are not concerned here. Since the insuring agreements as defined by the policy as to Coverages A and B are important, we set them out:

"I. Coverage A—Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by

any person, and as damages because of injury to or destruction of property, including the loss of use thereof.

"The term 'bodily injury' whenever used shall include injury arising out of the following hazards: False Arrest, Malicious Prosecution, Wilful Detention or Imprisonment, Libel, Slander or Defamation of Character, Invasion of Privacy, Wrongful Eviction or Wrongful Entry.

"Coverage B—Medical Payments: To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, X-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services, to or for each person who sustains bodily injury, sickness or disease, caused by accident,

"(1) while on the premises with the permission of an insured, or

"(2) while elsewhere if such injury, sickness or disease (a) arises out of the premises or a condition in the ways immediately adjoining, (b) is caused by the activities of an insured, (c) is caused by the activities of a farm or residence employee or is sustained by a residence employee and arises out of and in the course of his employment by an insured, or (d) is caused by an animal owned by or in the care of an insured."

If the policy terminated there, we would have little difficulty in agreeing with the plaintiff's position and the decree of the trial court. But there are other pertinent provisions, conditions and exclusions, and these are as much a part of the policy as the coverage itself. Mallinger v. State Farm Mutual Automobile Ins. Co., supra, loc. cit. 253 Iowa 229, 111 N.W.2d 651.

Part One of the policy, under the heading of "Exclusions", says: "This policy does not apply: * * * (d) Under Coverages A and B, to bodily injury to or sickness, disease or death of any farm employee arising out of and in the course of his employment by the insured unless farm employees are specifically declared in this policy * * *." Item 3 of that part of the policy known as the "Declarations" provides: "The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall

be as stated herein, subject to all the terms of this policy having reference thereto."

These provisions are plain and expressly limit the coverage of the policy to the items stated which are indicated by specific premium charges. Under the same heading of "DECLARATIONS", Item 8, is this:

| "The following discloses all farm employees and all full-time residence employees, in excess of two, wherever located, of the named insured or spouse and of all other insureds who are residents of the named insured's household, except employees not covered hereunder:<br><br>Farms — all employees, full time<br>—part time (accumulated time less than 9 months)<br>Full-time residence employees in excess of two." | Code No. | Premium Bases Number | Rate Per Each | Premiums |
|---|---|---|---|---|

Opposite these categories in parallel columns are set out these headings: Code No., Premium Bases (Number), Rate (Per Each), and Premiums. Each column is blank except for the headings indicated; that is to say, no number of employees is listed and no premium charge is made.

Here arises the major basis for the plaintiff's contention. It is his theory that it was not necessary to list the first two farm employees because of the language of the first part of Item 8 above. He contends that the words "in excess of two" apply to either or both the classes of farm employees and residence em-

948

ployees. If we had nothing more than the first sentence of Item 8 before us, this would be a plausible argument for ambiguity. The punctuation of the item down to and including the words "not covered hereunder", from the defendant's standpoint might be improved.

The plaintiff's case at this point depends upon the placing, or misplacing, of a comma.

■ But punctuation is a fragile basis for construction of a contract. We said in Seeger v. Manifold, 210 Iowa 683, 686, 231 N.W. 479, 480, 481; "While punctuation of a contract may assist, yet, ordinarily, it is of little value in construing it." We there quoted with approval from Ewing v. Burnet, 36 U. S. (11 Pet.) 41, 54, 9 L. Ed. 624, 630: "'Punctuation is a most fallible standard by which to interpret a writing; it may be resorted to when all other means fail, but the court will first take the instrument by its four corners, in order to ascertain its true meaning.'" To the same effect is language in 17A C. J. S., Contracts, section 306, page 159: "* * * the punctuation of a written contract, although it may aid in determining the meaning, will not control over words or change a meaning which is plain from a consideration of the whole document * * *." The rule is stated thus in 12 Am. Jur., Contracts, section 256, pages 799, 800: "In a contract which contains punctuation marks, the words, and not the punctuation, are the controlling guide in its interpretation. Punctuation is always subordinate to the text and is never allowed to control its meaning. The court will take the contract by its four corners and determine its meaning from its language and, having ascertained from the arrangement of its words what its meaning is, will construe it accordingly, without regard to the punctuation marks, or the want of them." Significantly, it is also said in Anderson & Kerr Drilling Co. v. Bruhlmeyer, 134 Tex. 574, 580, 136 S.W.2d 800, 803, 127 A. L. R. 1217, 1222, 1223: "While punctuation may be resorted to in order to solve an ambiguity which it has not created, punctuation or the absence of punctuation will not of itself create ambiguity."

In the instant case the plaintiff relies upon the punctuation as creating an ambiguity.

■ But we think the matter is clarified beyond fair argu-

ment by the following listings of "Farms—all employees, full time"; "Farms — part time (accumulated time less than 9 months)"; and "Full-time residence employees in excess of two." Here the words "in excess of two" are plainly related to residence employees only. A reading of the entire contract including all —not merely the first sentence of Item 8—leaves no ambiguity as to the meaning and the extent of the coverage. Under "EXCLUSIONS" the liability and medical provisions, Coverages A and B, are not available unless farm employees are specifically declared; Item 3 of the declarations provides that the policy affords insurance only to the coverages indicated by specific premium charges; and as we read Item 8, taking it in its entirety rather than by selecting only the first sentence, the words "in excess of two" relate only to residence employees, and any farm employees must be listed and a premium charged for coverage if the policy is to cover injuries to them. See Mealey v. Kanealy, 226 Iowa 1266, 286 N.W. 500, 131 A. L. R. 945.

Since we think the policy is clear in its intent that no farm employees are covered unless listed and a premium charged, we have no occasion to give any effect to the parol evidence introduced. It was conflicting; but whether objected to or not, under the circumstances here it has no weight. The rule against varying, modifying or contradicting written instruments by parol evidence is one of substantive law rather than of evidence, and such evidence will be disregarded even though not objected to when offered. Williams v. Williams, 251 Iowa 260, 264, 100 N.W.2d 185, 188; Martin v. Stewart Motor Sales Co., 247 Iowa 204, 209, 73 N.W.2d 1, 4; Des Moines v. West Des Moines, 244 Iowa 310, 314, 315, 56 N.W.2d 904, 906.

II. The plaintiff also pleaded waiver and estoppel. It appears that after the issuance of the policy and before the injury to the employee whose suit against the plaintiff brought about the present litigation, another farm employee had sustained an injury, for which claim was made and paid without protest by the defendant. The claim was small, amounting to $42.25. Whether the defendant paid it by oversight, or because it was so small it did not care to provoke a controversy, or to promote

950

public relations, or because of any other reason does not clearly appear.

■ In any event, the governing rule is clear, and is stated in 29A Am. Jur., Insurance, section 1135, page 289 : "The rule is well established that the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom, and the application of the doctrines in this respect is therefore to be distinguished from the waiver of, or estoppel to assert, grounds of forfeiture." The rule seems to be of general, in fact universal, application.

A leading and often cited case on the subject is McCoy v. Northwestern Mutual Relief Association, 92 Wis. 577, 585, 66 N.W. 697, 699, 47 L. R. A. 681, 685, in which the principle is clearly stated : "After a loss accrues, an insurance company may, by its conduct, waive a forfeiture; or by some act before such loss it may induce the insured to do or not to do some act contrary to the stipulations of the policy, and thereby be estopped from setting up such violation as a forfeiture; but such conduct, though in conflict with the terms of contract of insurance and with the knowledge of the insured and relied upon by him, will not have the effect to broaden out such contract so as to cover additional objects of insurance or causes of loss."

The Wisconsin Supreme Court also said, in Rosenthal v. Insurance Company of North America, 158 Wis. 550, 557, 149 N.W. 155, 157, L. R. A. 1915B 361, 364, Ann. Cas. 1916E 395, 398: "There might be waiver of a forfeiture, or of a breach of contract, but waiver as a ground for extending the scope of a written contract beyond the usual and ordinary meaning of the language employed would be quite a novelty."

The language from McCoy v. Northwestern Mutual Relief Association, supra, was quoted with approval and followed in Ruddock v. Detroit Life Insurance Co., 209 Mich. 638, 177 N.W. 242, 248. See also Washington National Life Ins. Co. v. Craddock, 130 Tex. 251, 109 S.W.2d 165, 113 A. L. R. 854; Bower & Kaufman v. Bothwell, 152 Md. 392, 136 A. 892, 52 A. L. R. 158; Manheim Ins. Co. v. Tyner, 142 Ky. 22, 133 S.W. 1000.

Many other authorities might be cited. In fact, we ourselves have quoted from and approved the holding in McCoy v. Northwestern Mutual Relief Association, supra, in Pierce v. Homesteaders Life Association, 223 Iowa 211, 217, 272 N.W. 543, 546, and Richardson v. Iowa State Traveling Men's Association, 228 Iowa 319, 326, 291 N.W. 408, 412.

■■ Attention is also called to paragraph 15 of the policy proper, which reads in part: "* * * nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy." The trial court found no estoppel, and in fact the plaintiff does not contend for it in argument, but says: "The point is that the lower Court in this case in its Findings of Fact and Conclusions of Law held that from the standpoint of its construction of the policy the Court could take into consideration the evidence with reference to what the defendant company did until the recent accident, under the rule that a Court can look to the conduct of the parties after a contract is entered into in order to determine what the parties intended by such a contract." This, in fact, is what the trial court did. It did not consider the evidence of payment of the earlier small claim as working a waiver or estoppel, but applied the rule of "practical construction" of the contract by the parties; and this is all the plaintiff contends for it.

But this rule has no force unless there is an ambiguity in the contract. In such case, the court may consider the understanding and intent of the parties as shown by their acts. In Westinghouse Electric & Mfg. Co. v. Tri-City Radio Electric Supply Co., 8th Cir., 23 F.2d 628, 632, it is said: "But the only place the conduct of the parties can have in construing a contract is as one of the recognized rules or means of construction where the contract is, within its four corners, ambiguous in some respect. Where the contract itself is clear and complete there is no room for any extraneous rules of construction."

We have held in the foregoing Division I that there is no ambiguity in the coverage afforded by the insurance policy issued by the defendant; and so there is no room for a construction based upon the conduct of the parties.

The decree of the trial court was in error, and must be set

aside. The cause is remanded with directions to enter a decree for the defendant.—Reversed and remanded, with directions.

All JUSTICES concur.