Daniel **SCHULIST, August E. Loefler, Jr., John Snellgrove, John Damas, Gale T. Jaffke, Joseph B. Grow, Jack L. Gabelhausen, Sr., Johan Faber, Jack Long, Charles N. Young, Richard Steffey, Carl D. Prohaska, Tom Bagwell, Stanley J. Kuchay, Harry Forber, and Richard J. Blankenheim, as Trustees of the Pattern Makers' Health and Welfare Trust, Plaintiffs,**

v.

**BLUE CROSS OF IOWA and Blue Shield of Iowa, Iowa corporations, Defendants.**

No. 80 C 6585.

United States District Court, N.D. Illinois, E.D.

Dec. 15, 1982.

---

[black rectangle]

Bernard J. Echlin, John A. Relias, N. Morrison Torrey, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for plaintiffs.

Donald J. Duffy, Kirkland & Ellis, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs in the instant case, the Trustees of the Pattern Makers' Health and Welfare Trust ("Trustees"), have sued Blue Cross of Iowa and Blue Shield of Iowa ("Blue Cross and Blue Shield") in a three-count complaint arising out of a Health and Welfare plan ("Plan"). Plaintiffs allege fraud, breach of contract and breach of fiduciary duty under the Employee Retirement Income Security Act ("ERISA") of 1974.[1] This matter is presently before the Court on the parties' cross-motions for summary judgment.[2] For reasons stated below, (1) defendants' motion for summary judgment is granted as to Counts I and III; (2) plaintiffs' motion for partial summary judgment is denied; and (3) defendants' motion for summary judgment as to Count II is denied, but Count II is remanded to an appropriate state court of Iowa.[3]

Plaintiffs established a joint labor-management trust for the purpose of providing employee health and welfare benefits through the Plan in 1977. On September 15, 1977, plaintiffs appointed as broker D.J. Cusack, instructing him to solicit bids for providing a health and welfare plan to trust beneficiaries. Defendants, which provide health benefit plans to individual and group subscribers, bid for and received the trust's business. The parties then entered into a Health and Welfare Plan for 1978 and 1979.

Plaintiffs argue in Count I of the complaint that defendants failed to comply with the information reporting and disclosure requirements contained in section 103 of ERISA, 29 U.S.C. § 1023, and several regulations promulgated thereunder, thus breaching fiduciary duties established by that statute. They further assert that defendants breached fiduciary duties under ERISA by failing to return for the benefit of the Plan an alleged surplus of $349,000 in policyholder reserves for 1978 and 1979. Count II alleges fraud on the part of defendants, in that information provided to plaintiffs contained false representations. Count III alleges that the failure to return the aforementioned alleged surplus constituted breach of contract.

[black rectangle] In considering these motions, we begin by observing that the party moving for summary judgment has the burden of clearly establishing that no genuine issues of material facts exist, and that he or she is entitled to judgment as a matter of law. *Cedillo v. International Association of Bridge & Structural Iron Workers, Local Union No. 1,* 603 F.2d 7, 10 (7th Cir.1979). Doubts as to the existence of material issues of fact must be resolved against the moving party. *Moutoux v. Gulling Auto Electric, Inc.,* 295 F.2d 573, 576 (7th Cir.

---

1. Jurisdiction is asserted pursuant to section 502(e) of ERISA, 29 U.S.C. § 1132(e).

2. This Court denied defendants' motion to dismiss or, in the alternative, to transfer this case on May 8, 1981.

3. Count II of plaintiffs' complaint alleges common law fraud on the part of defendants, and is thus a state law claim. As the Supreme Court has noted in discussing pendent jurisdiction of state law claims, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86

S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). *See also Smith v. No. 2 Galesburg Crown Finance Corp.,* 615 F.2d 407, 422 (7th Cir.1980). We therefore decline to exercise pendent jurisdiction over Count II, since we have dismissed the federal claims in Count I. Count II involves a matter best left to the Iowa courts, for defendants are Iowa corporations, the trust is situated in Iowa and the contract between the parties was executed in that state. We further observe that plaintiffs filed no motion for summary judgment as to Count II before this Court; it may be appropriate to do so before the state court that receives this action.

1961). Where cross-motions for summary judgment are filed, as in the instant case, the court must rule upon each party's motion individually, based upon affidavits and other proof submitted by the parties. 10 Wright and Miller, Federal Practice and Procedure § 2720 (1973). It is with these standards in mind that we consider the parties' motions.

### Count I

Plaintiffs argue that defendants failed to comply with information disclosure and reporting requirements set forth in ERISA.[4] As this Court recently observed, "ERISA resulted from concern over the rapid growth in size, scope and number of employee benefit plans, many of which had inadequate safeguards to protect the requisite funds." *McDougall v. Donovan,* 552 F.Supp. 1206, 1214 (N.D.Ill.1982). In enacting ERISA, Congress codified its concern that sufficient information regarding plan operations be provided to plan participants and beneficiaries. H.R.Rep. No. 93–533, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S. Code Cong. & Ad.News 4639. Section 103, for example, requires the administrator of an employee benefit plan to file an annual report concerning the plan with the Secretary of Labor and make it available to plan participants. 29 U.S.C. § 1023. Moreover,

> If some or all of the information necessary to enable the administrator to comply with the requirements of this subchapter is maintained by—
>
> (A) an insurance carrier or other organization which provides some or all of the benefits under the plan or holds assets of the plan in a separate account ... such

carrier ... *shall transmit and certify the accuracy of such information to the administrator* within 120 days after the end of the plan year (or such other date as may be prescribed under regulations of the Secretary). (Emphasis added).

Section 103(e) goes on to declare that:

> (e) If some or all of the benefits under the plan are purchased from and guaranteed by an insurance company, insurance service, or other similar organization, a report under this section shall include a statement from such insurance company, service, or other similar organization covering the plan year and enumerating—
>
> (1) the premium rate or subscription charge and the total premium or subscription charges paid to each such carrier, insurance service or other similar organization and the approximate number of persons covered by each class of such benefits; and
>
> (2) the total amount of premiums received, the approximate number of persons covered by each class of benefits, and the total claims paid by such company, service, or other organization; dividends or retroactive rate adjustments, *commissions,* and administrative service or other fees or other specific acquisition costs paid by such company, service, or other organization; any amounts held to provide benefits after retirement; the remainder of such premiums; and the *names and addresses of the brokers, agents, or other persons to whom commissions or fees were paid,* the amount paid to each, and for what purpose. (Emphasis added)

█ It is thus apparent that defendants' failure to certify information on the Sched-

---

4. Specifically, Blue Cross and Blue Shield submitted three sets of "Schedule A" forms for 1978 to the Plan Administrator. The Department of Labor has issued Regulations requiring that insurance carriers providing benefits under a plan submit such forms. 29 C.F.R. § 2520.-103–5 (1981). The first and second sets indicated that no commissions were paid, and the second set indicated that $317,000 was being held in policy reserves. Complaint, Exhibits F and G. The third set, however, indicated that there were no policy reserves, and that a com-

mission had been paid to D.J. Cusack. Complaint, Exhibit H. Blue Cross and Blue Shield further submitted two sets of Schedule A forms for 1979, the first of which stated that no commissions were paid, and that there was approximately $32,000 in income exceeding expenses. Complaint, Exhibit I. The second set of forms showed the commissions were indeed paid, again to Mr. Cusack. Complaint, Exhibit J. None of the forms, moreover, were certified. Blue Cross and Blue Shield offered no evidence to dispute the aforementioned facts.

ule A forms violated § 103 of ERISA; the failure to indicate the payment of commissions to Mr. Cusack in initial Schedule A forms also violated that section. Plaintiffs further argue that these omissions violated guidelines in ERISA governing the conduct of plan fiduciaries. Section 404 of ERISA sets forth the general standards of fiduciary duty.[5] But before deciding whether defendants deciding whether Blue Cross and Blue Shield violated these fiduciary standards, we must determine whether they are, under ERISA, fiduciaries of the Plan in the instant case.

■ Insofar as a person exercises discretionary authority or control concerning the management or administration of a plan, he or she is a fiduciary under ERISA.[6] In fact, Blue Cross and Blue Shield admit that they acted in a fiduciary capacity in the processing of health benefit claims. Memorandum in Support of Cross-Motion for Summary Judgment at 16. Although some courts have held that insurance companies are not necessarily fiduciaries solely by virtue of providing contractual benefits, *Austin v. General American Life Insurance*

*Co.,* 498 F.Supp. 844, 845, 846 (N.D.Ala. 1980); *cf. Cate v. Blue Cross & Blue Shield of Alabama,* 434 F.Supp. 1187, 1190 (E.D. Tenn.1977), we believe, as did the court in *Eversole v. Metropolitan Life Insurance Co.,* 500 F.Supp. 1162 (D.C.Cal.1980), that an insurance company with the authority to grant or deny claims is a fiduciary under ERISA. Since defendants had such authority, they are fiduciaries under ERISA.

■ But an analysis of the general standard of fiduciary duty under § 404 of ERISA, *see* note 4 *infra,* does not persuade us that Blue Cross and Blue Shield's failure to comply with § 103 of ERISA amounts to a breach of their fiduciary duties under § 404. Blue Cross and Blue Shield eventually did provide plaintiffs with the name of the broker and the amount of commissions paid to him, albeit after initially submitting inconsistent Schedule A forms. While the forms were not certified, in violation of § 103, this lack of certification, in our opinion, does not rise to a violation of § 404; we cannot help but note that the information required was provided.[7]

---

5. Section 404 provides that:
   ... a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
   (A) for the exclusive purpose of:
   (i) providing benefits to participants and their beneficiaries; and
   (ii) defraying reasonable expenses of administering the plan;
   (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
   (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
   (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter.
   29 U.S.C. § 1104.

6. 29 U.S.C. § 1002(21)A declares that
   a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

7. We must emphasize that our holding today does not mean that other violations of § 103 of ERISA would not amount to a breach of fiduciary duties contrary to § 404 of the statute. We emphatically do not decide that issue. In *Redwood Bank v. QTA,* 266 FPR D–6 (N.D.Cal. 1979), the court declared that QTA, which failed to prepare financial statements and reports in connection with retirement plans for a trustee to those plans, was obliged to perform the recordkeeping requirements of § 103 with the degree of care set forth in § 404 of the statute. Because the violations of § 103 in the instant case do not rise to the level of the violations in *Redwood Bank,* we decline to hold that Blue Cross and Blue Shield's violations of § 103 ran afoul of § 404.

Count I goes on to assert that Blue Cross and Blue Shield's failure to return an alleged policyholder reserve surplus for 1978 and 1979 constituted a breach of fiduciary duties under ERISA. According to plaintiffs, the 1978 premium rate led to a premium surplus of $317,000, and the 1979 premium rate led to yet another surplus of approximately $32,000. By failing to return this surplus to the Plan or use it to provide future benefits to the participants, the Trustees argue that Blue Cross and Blue Shield (1) breached § 404(a) of ERISA. *See* note 4, *supra;* and (2) violated § 406 and § 408 of the statute. We will consider each of these arguments in turn.

Although Blue Cross and Blue Shield are fiduciaries under ERISA in that they exercised discretionary authority and control concerning management of the Plan, the retention of premiums paid under the terms of the Health and Welfare Plan does not constitute a violation of Blue Cross and Blue Shield's fiduciary duty to act "solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries; and defraying reasonable expenses of administrating the plan." 29 U.S.C. § 1104(a). While we are mindful that ERISA is a comprehensive statutory scheme to protect participants and beneficiaries of employee benefit plans, the retention of premiums paid under a freely negotiated insurance contract does not constitute a violation of Blue Cross and Blue Shield's fiduciary duties under ERISA. The Trustees have cited no judicial authority or legislative history to the contrary.

The plaintiff Trustees, however, go on to assert that the retention of the premium surplus violated § 408 of ERISA because it was not "reasonable compensation" for the services Blue Cross rendered to the Plan. The Trustees correctly observe that § 406 of the statute supplements the fiduciary obligations set forth in § 404. Section 406 prohibits fiduciaries from causing the Plan to engage in certain specified transactions.[8] Plaintiffs then point to § 408(b), which provides for certain exemptions from the provisions of § 406,[9] and argue that § 408 pro-

---

**8.** Section 406 of ERISA states that:

(a) Except as provided in section 1108 of this title:

(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—

(A) sale or exchange, or leasing, of any property between the plan and a party in interest;

(B) lending of money or other extension of credit between the plan and a party in interest;

(C) furnishing of goods, services, or facilities between the plan and a party in interest;

(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan; or

(E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.

(2) No fiduciary who has authority or discretion to control or manage the assets of a plan shall permit the plan to hold any employer security or employer real property if he knows or should know that holding such security or real property violates section 1107(a) of this title.

(b) A fiduciary with respect to a plan shall not—

(1) deal with the assets of the plan in his own interest or for his own account,

(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or

(3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

(c) A transfer of real or personal property by a party in interest to a plan shall be treated as a sale or exchange if the property is subject to a mortgage or similar lien which the plan assumes or if it is subject to a mortgage or similar lien which a party-in-interest placed on the property within the 10-year period ending on the date of the transfer.

29 U.S.C. § 1106.

**9.** The relevant part of § 408(b) of ERISA provides that:

(b) The prohibitions provides in section 1106 of this title shall not apply to any of the following transactions:

\* \* \* \* \* \*

(2) Contracting or making reasonable arrangements with a party in interest for office

hibits compensation for services which is not reasonable. This argument, however, misapprehends the nature of the statute.

▪ The prohibitions in § 406 reflect Congress' desire to prevent transactions which might lead to a loss of plan assets or insider abuse, *Marshall v. Kelly,* 465 F.Supp. 341, 354 (W.D.Okla.1979), and were designed to avoid placing trustees of a pension plan into positions which create conflicts of interest and prevent them from acting exclusively for the benefit of a plan's participants and beneficiaries. *N.L.R.B. v. Amax Coal Co., a Division of Amax, Inc.,* 453 U.S. 322, 101 S.Ct. 2789, 2796, 69 L.Ed.2d 672 (1981). While Blue Cross and Blue Shield are fiduciaries with respect to the Plan, they are not trustees, and they have not caused the Plan to engage in a transaction which constitutes a furnishing of services between the Plan and a party in interest. 29 U.S.C. § 1106. It is therefore apparent that by their very language, §§ 406 and 408 are inapposite to the instant situation. Accordingly, Blue Cross and Blue Shield's motion for summary judgment as to Count I is granted.

### Count III

The Trustees assert that the failure of Blue Cross and Blue Shield to return the $349,000 in alleged surplus premiums, or apply them for future benefits, amounts to a breach of contract. In support of this assertion, they argue that the contract's silence concerning the return of any premium surplus or other financial arrangements constitutes an ambiguity. Therefore, plaintiffs would have this Court apply traditional contract law principles and (1) examine the intention of the parties in order to interpret the contract, and (2) construe the contract against the insurer and find that Blue Cross and Blue Shield have breached the contract. In response, defendants deny that there are ambiguities in the contract and maintain that they are not guilty of any breach.

▪ Both parties agree that this Court must apply Iowa law in construing the contract, since the contract was executed in that state, and the trust is situated there. The construction of contracts, including insurance policies, is a matter of law. *Iowa-Des Moines National Bank v. Insurance Company of North America,* 459 F.2d 650, 653 (8th Cir.1972); *Farm Bureau Mutual Insurance Co. v. Sandbulte,* 302 N.W.2d 104, 107 (Iowa 1981). If an insurance contract is ambiguous and susceptible to different interpretations, it must be construed to effectuate the intent of the parties, *Indemnity Insurance Co. v. Pioneer Valley Savings Bank,* 343 F.2d 634, 646 (8th Cir.1965); parol evidence may be admitted to ascertain the meaning of such a contract, *Randolph v. Fireman's Fund Insurance Co.,* 255 Iowa 943, 124 N.W.2d 528, 529 (1963). In construing an insurance contract, a court shall adopt the construction which is most favorable to the insured, and against the insurer, *Benzer v. Iowa Mutual Tornado Assurance Assn.,* 216 N.W.2d 385, 388 (Iowa 1974). But if a contract is not ambiguous, there is no need to resort to the aforementioned rules of construction, *Northwestern States Portland Cement Co. v. Hartford Fire Insurance Co.,* 360 F.2d 531, 534–35 (8th Cir.1966); *Bosch v. Garcia,* 286 N.W.2d 26, 28 (Iowa 1979). In such a situation, it is not the role of a court to make a new contract for the parties by construction of clear and unambiguous terms in a written contract. *Kolls v. Aetna Casualty and Surety Co.,* 378 F.Supp. 392, 398 (S.D.Iowa 1974), *aff'd,* 503 F.2d 569 (8th Cir.1974); *State Farm Auto Insurance Co. v. Malcolm,* 259 N.W.2d 833, 835 (Iowa 1977).

▪ In the instant case, we are unable to find any ambiguities in the contract which would necessitate an analysis of the parties' intentions.[10] The silence of the con-

---

space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor.
29 U.S.C. § 1108.

10. The Trustees moved this Court to strike the affidavit of Michael L. Stoll, which Blue Cross

tract with regard to any premium surplus does not constitute an ambiguity, but rather, indicates that the parties agreed to no refunds. We decline to rewrite the contract to include a provision for a refund of any premium surplus; the parties themselves have done so for the year 1980, Exhibit 15 to defendants' Memorandum in Support of Summary Judgment. We therefore grant Blue Cross and Blue Shield's motion for summary judgment as to Count III.

### Count II

 The Trustees in Count II of their complaint charge that by providing contradictory information on Schedule A forms concerning commissions and policy reserves, Blue Cross and Blue Shield are guilty of fraud. The Trustees do not seek summary judgment on this Count; Blue Cross and Blue Shield, in support of their motion, state only that construction of the contract in their favor would dispose of Count II because there can be no common law fraud if they were entitled to retain the alleged premium surplus. This statement alone does not meet Blue Cross and Blue Shield's burden of showing that there are no genuine issues of material fact as to this issue, entitling them to judgment as a matter of law. *Cedillo v. International Association of Bridge & Structural Iron Workers, Local Union No. 1,* 603 F.2d 7, 10 (7th Cir.1979). Accordingly, Blue Cross and Blue Shield's motion for summary judgment on Count II is denied.

### Conclusion

Accordingly, Blue Cross and Blue Shield's motion for summary judgment is granted as to Counts I and III, but denied as to Count II. The Trustees' motion for summary judgment is denied. Count II is remanded to the Iowa District Court in and for Polk County. It is so ordered.

and Blue Shield submitted in support of their motion for summary judgment. Because we have held that an analysis of the intent of the parties is unnecessary in light of the unambiguous provisions of the contract, we have not considered the Stoll affidavit and need not ad-

dress the issues raised by the Trustees in their motion to strike. The same is true concerning Exhibits 2, 3, 7, 10 and 12 to Blue Cross and Blue Shield's memorandum, which the Trustees also asked us to strike.