AEROLINE FLIGHT SERVICE, INC., a corporation, appellant, v. INSURANCE COMPANY OF NORTH AMERICA, a corporation, appellee.

No. 51563.

(Reported in 133 N.W.2d 80)

410

FEBRUARY 9, 1965.

Stanley, Bloom & Mealy, of Muscatine, for appellant.

Boyd, Walker & Concannon, of Keokuk, for appellee.

SNELL, J.—This is an action at law to recover under an aircraft insurance policy issued by defendant, Insurance Company of North America, a corporation, to plaintiff, Aeroline Flight Service, Inc., a corporation.

In 1959 plaintiff, from its office at Quad City Airport, Moline, Illinois, operated a sales, service and rental service for both new and used aircraft.

Plaintiff carried its major insurance with defendant. During the period involved herein there was in force an insurance policy issued by defendant to plaintiff insuring plaintiff against any loss of or damage to any aircraft owned by plaintiff in an amount not exceeding $50,000.

Coverage E of the policy was an "All Risks Physical Damage Coverage" insuring plaintiff against loss or damage to its aircraft. There is no controversy over this provision.

The present controversy arises under Special Provision "C", Exclusion "r" and Condition "4".

Special Provision "C" provides that "* * * this insurance shall terminate with respect to any aircraft disposed of on the date of sale of such aircraft or the surrender of the legal possession thereof by the insured * * *."

Under Exclusion "r" the insurance does not apply "to loss of or damage to any aircraft not owned by the named insured."

Condition "4" requires filing of proof of loss within sixty days after a loss (unless the time is extended in writing by defendant). The policy makes compliance a condition precedent to suit or action for recovery thereunder.

The aircraft involved herein was a 1959 Cessna 172. It crashed and was damaged beyond repair at Fort Madison, Iowa, on October 25, 1959, while piloted by a duly licensed pilot and a member of the Fairfield Flying Club.

The Fairfield Flying Club was a group of eighteen local people who pooled together to own and operate an airplane. The club owned a 1956 Cessna Model 172 airplane. Members were charged $7.00 per hour for use of the plane. The club held regularly scheduled membership meetings once a month. During the summer of 1959 the members of the club discussed buying a new airplane, either a Cessna 172 or a Cessna 175. The members were not in agreement as to which plane to buy. A committee was appointed to "discuss an airplane with Aeroline Flight Service", plaintiff herein. The committee had no power to decide which plane to buy. That decision was reserved for a club membership vote.

The only witnesses testifying as to discussions or arrangements between the club and plaintiff were Paul Engwall, a member of the committee and secretary-treasurer of the club, and Ronald C. Vorhies, at that time sales manager for plaintiff. Their testimony is undisputed.

Mr. Vorhies had attended a regular meeting of the club in July 1959. He discussed trading the club's 1956 Cessna 172 for either a 1959 Cessna 172 or a 1958 Cessna 175. The 175 was more powerful, faster and could land and take off on a shorter runway. Mr. Vorhies recommended the 175 for two reasons. He thought the club could operate the 175 to advantage and the purchase would be to the definite advantage of plaintiff, i.e., more profitable.

In a meeting between Mr. Vorhies and the club's committee members it was agreed that the club would buy one of the two

planes. The members of the club were to try out the two airplanes and then decide which to buy.

Mr. Vorhies proposed that the club try the 1959 Cessna 172 in order to make an effective demonstration of the more powerful 175. The 172 was at the Fairfield Airport at the time and was left with the club for demonstration purposes so each member could fly the airplane.

To be assured of a sale of some plane Mr. Vorhies asked for the deposit with him of the club's old plane and a cash deposit of $3250. This was done. Coincident therewith Mr. Vorhies filled in and Mr. Engwall, a member of the club's committee, signed a written instrument. It was as follows:

"CESSNA AIRPLANE PURCHASE ORDER

| | | |
|---|---|---|
| Fairfield Flying Club | Dealer's Name | A.F.S. |
| Customer's Name | | |
| Fairfield, Iowa | Address | |
| Address | | |

Please enter my order for a cessna airplane as detailed below. The attached deposit is to apply against the total purchase price and I/we agree to complete this agreement and accept delivery 48 hours after notification subject only to conditions and warranty printed on this order.

| | |
|---|---|
| Cessna Model 172 | Color 6474E |
| Cash Price—F.A.F. Wichita | |
| Optional Equipment List (see accessory price list) | |
| 1 cyl temp gauge | |
| 5 x 15 — 122.7 — 122.6 — 121.5 — 118.6 — 121.9 | |
| Change gyros and venturi from 6973A to 6474E and install | |
| 1 new venturi | |
| Polish Plane-Sub Total | Sub Total |
| Total Optional Equipment Price | Trade in 6973A |

Cash Delivered Price With Accessories and Equipment Plus
Gas, Oil and Delivery Costs_____
State and Local Taxes, if any_____
License, Transfer and Registration Fees. Cash Difference $3250.
TOTAL CASH DELIVERED PRICE_____

Cash deposit with this order_____
Used airplane : Make____Model____Serial No.____Allowance____
Amount of cash to be paid on delivery_____
Total Credit Toward Purchase Price_____
Balance to be financed_____
Balance in____Monthly Notes of $____Each Starting_____
Remarks : can be traded for 48M for difference in list price.

> I have read the manufacturer's warranty and conditions of sale printed on the reverse side of this agreement and accept them as if they were printed directly over my signature.
>
> BUYER'S SIGNATURE Paul Engwall
>
> Salesman's Signature_____
> Insurance Coverage (Kind)_____Effective Date_____
> Name of Insurance Company_____
> In What Name Should New Airplane Be Registered?_____
> What Name Does Trade-In Registration Carry?_____
> Accepted By_____
> Signature of Dealer
>
> Address "

This paper was never signed by Mr. Vorhies nor by his company nor anyone authorized to make a purchase for Fairfield Flying Club. Mr. Vorhies and Mr. Engwall both testified that the writing was not the complete agreement. They testified that it was signed to show that the club would buy an airplane and to show why Mr. Vorhies left the plane with the club.

Only part of the "optional equipment" was installed. The 48M mentioned under Remarks referred to the Cessna 175. The paper was not dated but was signed by Mr. Engwall about August 8, 1959.

The oral testimony is definite and uncontradicted that the Fairfield Flying Club did not agree to buy the 1959 Cessna 172.

The club had the right to choose either the 172 or the 175 and would buy one of the two. During the next 78 days many, but not all, of the club members tried out the 172. Mr. Vorhies kept in touch with the progress of the demonstration by visiting with club members. The club planned a meeting for the first Friday in November to decide on the purchase of one of the two aircraft.

On October 25 while operated by a member of the club the Cessna 172 crashed. Following the crash plaintiff picked up the wrecked plane and took it to Moline. The Flying Club was not involved in this disposition.

Plaintiff claiming to be the owner of the plane seeks recovery under the insurance policy issued to plaintiff by defendant.

Defendant denied that plaintiff was the owner of the plane at the time of loss, denied coverage under the policy of insurance and denied proper proof of loss.

Defendant offered no testimony.

At the close of the evidence defendant moved for a directed verdict. The motion was overruled.

Plaintiff moved for a directed verdict. The motion was sustained and entry of judgment for $8121.62 directed.

Thereafter the court sustained defendant's motion for judgment notwithstanding the verdict. From the final judgment entered thereon plaintiff has appealed.

The trial court's ruling was based solely on the conclusion "that legal possession of the 172 had been surrendered by the plaintiff." This question arises under the wording of Special Provision "C" of the insurance policy quoted, supra.

We think this provision in the policy should be read in connection with the policy as a whole and in the light of the declarations attached to and made a part of the policy.

Item 5 of the Declarations is as follows:

"The purposes for which the aircraft will be used are personal, pleasure, family and business use; sales demonstration, rental, charter, student instruction, aerial photography, power line patrol, Banner Towing and other aerial inspections and surveys."

This problem is considered in Division II, infra.

■ I. The admissibility of the testimony and evidence upon which this case rests is neither challenged nor argued. The uncontroverted testimony shows that the paper signed by Mr. Engwàll was not an authorized purchase order. It did not show the agreement or conditions under which the plane was left with the Flying Club. Neither plaintiff nor Fairfield Flying Club has claimed that there was a sale of°the particular plane involved or that the club was the owner. The club never received any transfer or certificate of title. There was an agreement to buy either the Cessna 172 or the Cessna 175, but no agreement as to which plane would be purchased. It was not a case of sale or return, delivery on approval, or on trial, or on satisfaction within the provisions of the Sales Law, section 554.20, Code of Iowa, 1962. It was a contract to sell an unascertained plane within the provisions of section 554.18, Code of Iowa, 1962. This statute provides:

"When property passes. Where there is a contract to sell unascertained goods no property in the goods is transferred to the buyer unless and until the goods are ascertained * * *."

Under section 554.23, Code of Iowa, "Unless otherwise agreed, the goods remain at the seller's risk until the property therein is transferred to the buyer * * *."

Under these statutes as well as under the evidence as to the agreement and intent of the parties there was no sale by plaintiff to Fairfield Flying Club. There was no surrender of ownership by plaintiff nor acquisition by the club.

Special Provision "C" quoted, supra, uses the words "disposed of on the date of sale." Disposition as used in this provision clearly refers to a sale. While there might be a disposition other than by sale (by gift or legal process) there is no such issue here.

We conclude as did the trial court in the initial ruling that there was no sale or disposition by plaintiff and that plaintiff was the owner of the 1959 Cessna 172.

II. The real problem arises under that part of Special Provision "C" providing for termination of insurance coverage on "any aircraft disposed of on the date of sale of such aircraft or the surrender of the legal possession thereof by the insured * * *."

Defendant, insurance company, argues that legal possession of the plane had been surrendered when the plane was left with Fairfield Flying Club.

If there is ambiguity or conflict in the provisions of the insurance policy it must be construed against the insurer and in favor of plaintiff. Parker v. Iowa Mutual Tornado Insurance Assn., 220 Iowa 262, 264, 260 N.W. 844, and cases cited; Service Life Insurance Co. v. McCullough, 234 Iowa 817, 824, 825, 13 N.W.2d 440, 153 A. L. R. 697; Dezsi v. Mutual Benefit Health & Accident Assn., 255 Iowa 1027, 1033, 125 N.W.2d 219, 223.

In Murphy v. New York Life Insurance Co., 219 Iowa 609, 613, 258 N.W. 749, 751, we said: "Contracts of insurance should not be construed through the magnifying eye of a technical lawyer, but rather from the standpoint of what an ordinary man would believe the contract to mean."

Item 5 of the "Declarations" attached to the policy and quoted supra includes "sales demonstration" among the purposes for which the aircraft would be used. Under the agreement between plaintiff and the Flying Club two planes were to be tried out and one purchased. The plane was clearly being used in a sales demonstration and within the declaration as to use. It does not seem reasonable that "an ordinary man" would believe that leaving the plane with a flying club to try out would be such a "surrender of the legal possession" as to void the insurance.

The Declarations attached to the policy are a pertinent part thereof and as much a part of the policy as the coverage itself. Mallinger v. State Farm Mutual Automobile Insurance Co., 253 Iowa 222, 229, 111 N.W.2d 647; Randolph v. Fireman's Fund Insurance Co., 255 Iowa 943, 946, 124 N.W.2d 528, 529.

"Punctuation is a fragile basis" for construction of a contract but may assist although ordinarily of little aid. Randolph v. Fireman's Fund, supra; Seeger v. Manifold, 210 Iowa 683, 686, 687, 231 N.W. 479, 480, 481.

For what little aid it may be we note that in the pertinent part of Special Provision "C" there is no punctuation. The words "surrender of the legal possession" are in no way set off by themselves so as to constitute a separate situation under which

the insurance terminates. We think the words are more logically tied in with the other provisions to mean that the insurance terminates when the covered property is disposed of by sale or possession is surrendered under a sale. A contrary construction is neither clear nor in harmony with the tenor of the policy. If the insurer intended such a meaning it should have been clearly stated. Shain v. Mutual Benefit Health and Accident Assn., 232 Iowa 1143, 1149, 7 N.W.2d 806.

There is sufficient ambiguity to require construction and if so, any doubt must be resolved against the insurer.

Depending on circumstances and the way used, the words "legal possession" are susceptible of different meanings. The words are not necessarily synonymous with custody. They may refer to a temporary condition such as a football or baseball player having legal possession of the game ball or a messenger delivering a package. Conversely, a registered owner of an automobile is not deprived of legal possession when his wife drives the car. A person may be possessed of intangibles not capable of physical custody.

There might be lawful possession of an article in the sense that possession was not unlawful or illegal. The custody of a car operated by a chauffeur would not be unlawful or illegal but the legal possession would be in the owner.

Exclusion "r" relates to any aircraft not owned by the insured. We have held, supra, that the plane was owned by plaintiff. Exclusion (g) is "For any purpose or use not stated in Item 5 of the declaration." The use of the plane at the time of loss was within the stated declarations.

Concluding, as we do, that the words relied on by defendant must be construed as referring to a sale or contract of sale, the plaintiff had not surrendered such legal possession of the Cessna 172 so as to terminate the insurance coverage thereon.

III. Condition 4(b) of the insurance policy requires the insured in case of a loss to give notice thereof as soon as practicable to the company or any of its authorized agents.

Condition 4(c) requires the filing of proof of loss with the company in the form of a sworn statement within sixty days.

Conditions 10 and 11 make compliance with the provisions of the policy a condition precedent to recovery.

The insurance policy was written and sold to plaintiff by Randy Roland who countersigned as a duly authorized agent of the company. Plaintiff had carried its major insurance with defendant since March 1, 1956. Much of this business was handled through Mr. Roland. In connection with previous claims or losses defendant had furnished plaintiff with proof of loss forms to be signed.

The plane was damaged on October 25, 1959. On October 26 plaintiff's general manager made a telephone call to Mr. Roland stating that this aircraft was involved in a serious loss. Mr. Roland reported this telephone call to the claims department of defendant by letter dated October 26 (plaintiff's Exhibit 3). On October 30 plaintiff filed with defendant a "Notice of Aircraft Accident" (plaintiff's Exhibit 4), and a "Pilot Statement" (plaintiff's Exhibit 5), by the pilot of the plane, using defendant's standard forms. These forms did not require verification by affidavit. These forms were completely filled out as to detail and description and indication of total loss.

Within sixty days after the accident defendant sent its adjuster to investigate the loss and the facts and circumstances thereof.

Plaintiff did not file a sworn proof of loss with defendant within sixty days after the loss on October 25, 1959. No issue was raised because of this delay until long after defendant had denied liability on other grounds. In the interval the parties apparently continued discussion or correspondence because on January 21, 1960, defendant wrote plaintiff as follows:

"INSURANCE BY NORTH AMERICA

> "Insurance Company of
> "North America
> "Indemnity Insurance
> "Company of North America
> "Life Insurance Company
> "of North America
>
> "2501 Grand Avenue,
> "Des Moines 12, Iowa

"January 21, 1960

"Aeroline Flight Service, Inc.
"Quad City Airport
"Moline, Illinois

"Attention: Mr. Cecil R. Walshire, Manager

 "Re: 162 RS 114
 "Aeroline Flight Service
 "Policy #ANM 26739
 "D/E 10-25-59

"Dear Mr. Walshire:

"In accordance with your request we have completely reviewed the above captioned file and regret to inform you that no coverage exists under your policy ANM 26739.

"We are sorry that we cannot be of service to you in this instance.

"Please advise if you have any additional questions.

 "Sincerely yours,
 "/s/ Paul W. Witzenburg,
 "Paul W. Witzenburg,
 "Supervisor

"PWW/pf"

The record does not indicate that prior to this letter there had been any question about or denial of coverage. A paper (plaintiff's Exhibit 7) designated "Proof of Loss" signed and sworn to by plaintiff's manager, was mailed by plaintiff and received by defendant on June 23, 1960. This document was held by defendant without comment until August 1, 1960, at which time defendant refused to accept it as not filed within sixty days.

Complete statements as to the loss had been given promptly. They were received and recognized by defendant by sending its adjuster to investigate. There was no lack of information and no request for further reports. Defendant had everything necessary to adjust the loss and proceeded accordingly. After the expiration of the sixty days for filing "Proof of Loss" defendant denied liability on the ground that "no coverage exists

under" the policy. Not until August 1, 1960, did defendant ever raise any question about a proof of loss.

Defenses based on policy provisions for proof of loss have been frequently considered by our court.

In LeMars Mutual Insurance Co. v. Tasler, 254 Iowa 604, 609, 118 N.W.2d 524, we reviewed and cited many authorities. We said that "under certain circumstances the filing of formal proof of loss is waived." On page 610 we said:

▮ "In Schoeman v. Loyal Protective Life Ins. Co., supra, at page 670 of 239 Iowa, this court said: 'The function of proofs of loss is to advise the insurer of the essential facts upon which its liability depends. Generally speaking, provisions for the furnishing of such proofs will be liberally construed in favor of the insured.'

▮ "As to general provisions of law see following statement in 29A Am. Jur., Insurance, section 1401, page 514, supra: 'No matter what the form of a notice of loss may be, if it operates to bring the attention of the insurer to the loss * * *, sets forth the essential facts upon which the liability of the insurer depends, and appears credible, it is sufficient.' "

In Schoeman v. Loyal Protective Life Insurance Co., 239 Iowa 664, 671, 32 N.W.2d 212, we said:

▮ "* * * An insurer's denial of liability on grounds other than failure to furnish proofs of loss operates as a waiver of the right to require proofs. [Citations] Shuffling, tricky or evasive conduct of the insurer amounting neither to an absolute denial nor recognition of liability may also constitute a waiver. [Citations] Likewise a waiver of proofs may result from an attempt to negotiate a settlement. [Citation] Waiver may result also from insurer's failure to object to the sufficiency of the proofs [Citations]."

See also Parker v. Iowa Mutual Tornado Insurance Assn., supra, loc. cit. 270 of 220 Iowa; Lee v. Farmers' Mutual Hail Insurance Assn., 214 Iowa 932, 933, 241 N.W. 403; Elliott v. Home Mutual Hail Assn., 160 Iowa 105, 106, 140 N.W. 431.

▮ Defendant's defense based on failure to file sworn proof of loss is neither valid nor timely. Plaintiff's prompt reports of the loss, defendant's actual knowledge and investigation,

422

delay in adjustment or denial of liability and then denial of liability on other grounds constitute a waiver of formal sworn proof of loss within sixty days.

IV. In this case there are no factual disputes. The problems are questions of law and the legal effect of uncontroverted facts.

We conclude that defendant's motion for judgment notwithstanding the verdict should have been overruled.

The case is reversed and remanded with instructions to reinstate the judgment in favor of plaintiff.—Reversed and remanded.

All JUSTICES concur.