SKYLINE HARVESTORE SYSTEMS, INC., Appellant,

v.

CENTENNIAL INSURANCE COMPANY, Appellee.

No. 68107.

Supreme Court of Iowa.

March 16, 1983.

James F. Smith of Noah & Smith, Charles City, for appellant.

W.C. Hoffmann and Joseph S. Cortese, II of Jones, Hoffmann & Davison, Des Moines, for appellee.

Wayne C. Collins of Shuttleworth & Ingersoll, Cedar Rapids, for amicus curiae State Farm Mutual Automobile Ins. Co.

Considered by LeGRAND, P.J.,* and HARRIS, McCORMICK, McGIVERIN and CARTER, JJ.

McGIVERIN, Justice.

Plaintiff insured, Skyline Harvestore Systems, Inc., appeals from trial court's declaratory judgment that the insurance policy issued by defendant Centennial Insurance Company does not cover possible awards of punitive damages in personal injury lawsuits against plaintiff. We conclude that Centennial's liability insurance policy does include coverage of punitive damage awards; accordingly, we reverse the ruling of the trial court.

Skyline notified its insurer, Centennial, that Skyline had been sued in two personal injury actions which involved claims for punitive damages. These actions resulted from equipment sold by Skyline and used and operated by the claimants. Centennial advised Skyline by letter that coverage for the punitive damages claims would not be provided by the insurance company under the terms of the policy.

Plaintiff then filed a petition for declaratory judgment against Centennial to determine its rights under the policy. Centennial's answer admitted the factual context of the case.

The district court's ruling was made on an application, filed by Skyline, to adjudicate points of law. Iowa R.Civ.P. 105. The

* Senior Judge.

court addressed two issues: (1) Whether the insurance policy would cover an award of punitive damages against Skyline; and (2) whether insurance coverage of punitive damages frustrated the public policy purposes of punitive damages. Both issues were resolved in favor of the defendant Centennial and plaintiff appealed.

I. *Whether the insurance policy covers an award of punitive damages.* The policy issued to Skyline by defendant Centennial was a comprehensive general liability insurance policy, which provided that:

> The company will pay on behalf of the insured all sums that the insured shall become legally obligated to pay as damages because of
> A. bodily injury or
> B. property damage
> to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

■ Plaintiff and defendant both interpret *City of Cedar Rapids v. Northwestern National Insurance Company of Milwaukee, Wisconsin,* 304 N.W.2d 228 (Iowa 1981) (insurance policy covered punitive damages judgment against municipality), in a manner supporting their construction of the policy at issue here. The policy in *City of Cedar Rapids* had very similar coverage language to the one in the present case. Plaintiff claims that the broad language of its insurance policy with defendant must be construed as covering a punitive damages award. Defendant, on the other hand, asserts that the insurance policy in *City of*

*Cedar Rapids* was construed to require coverage of punitive damages only because municipalities had a *statutory* right to insure against punitive damages. Iowa Code § 613A.7 (1979).[1] Consequently, defendant continues, because there is no statutory provision allowing individuals to insure against punitive damages, the insurance policy issued to Skyline cannot be construed as covering punitive damages.

We believe that our holding in *City of Cedar Rapids* supports plaintiff's contention.

■ In *City of Cedar Rapids,* we adopted the approach of construing coverage of "all sums" in the language of that insurance policy to include not only actual or compensatory damages, but punitive damages as well. *City of Cedar Rapids,* 304 N.W.2d at 231; *see also Abbie Uriguen Oldsmobile Buick, Inc. v. United States Fire Insurance Co.,* 95 Idaho 501, 507, 511 P.2d 783, 789 (1973); *State v. Glens Falls Insurance Co.,* 137 Vt. 313, 319, 404 A.2d 101, 105 (1979); *Hensley v. Erie Insurance Co.,* W.Va., 283 S.E.2d 227, 229 (1982). This construction comports with the rule that insurance contracts should be construed "from the standpoint of what an ordinary man would believe the contract to mean." *Aeroline Flight Service, Inc. v. Insurance Company of North America,* 257 Iowa 409, 417, 133 N.W.2d 80, 85 (1965). The insurer assumes a duty to define, in clear and explicit terms, any limitations or exclusions to coverage expressed by broad promises. *Zenti v. Home Insurance Co.,* 262 N.W.2d 588, 590 (Iowa 1978).

We know of no reason why an individual must have statutory authority to obtain similar insurance coverage similar to that of a municipality. The policy issued to Skyline makes no distinction between compensatory and punitive damages. Additionally, we discern no express limitations of coverage of punitive damages; thus we afford to the "all sums" clause its plain, ordinary and popular meaning. The policy issued to Sky-

---

1. Chapter 613A was amended in 1982 to prohibit the recovery of punitive damages against municipalities. 1982 Iowa Acts, ch. 1018, §§ 5, 6, amending Iowa Code §§ 613A.4, .8 (1981).

line covers liability for both compensatory and punitive damages.

■ II. *Whether public policy precludes a payment of punitive damages under an insurance policy.* Defendant contends that insurance coverage of punitive damages would contravene the public policy purposes underlying punitive damages. Those purposes are punishment and deterrence. *Berenger v. Frink,* 314 N.W.2d 388, 391 (Iowa 1982); *Syester v. Banta,* 257 Iowa 613, 627, 133 N.W.2d 666, 675 (1965). While we do not repudiate those purposes here, we do not believe that the public policy reasons for punitive damages can override other considerations favoring coverage of punitive damages under this insurance policy.

Debate on this issue has not subsided since *City of Cedar Rapids* was decided. *See* Ellis, *Punitive Damages in Iowa Law: A Critical Assessment,* 66 Iowa L.Rev. 1005, 1065–69 (1981); *Hensley v. Erie Insurance Co.,* W.Va., 283 S.E.2d at 229–231 nn. 4–8; Annot. 16 A.L.R.4th 11 (1982). The divergent views were initially typified by *Northwestern National Casualty Co. v. McNulty,* 307 F.2d 432 (5th Cir.1962) and *Lazenby v. Universal Underwriters Insurance Co.,* 214 Tenn. 639, 383 S.W.2d 1 (1964).

In *McNulty,* the court stated:

[I]t appears to us that there are especially strong public policy reasons for not allowing socially irresponsible automobile drivers to escape the element of personal punishment in punitive damages when they are guilty of reckless slaughter or maiming on the highway. It is no answer to say, society imposes criminal sanctions to deter wrongdoers; that it is enough when a civil offender, through insurance, pays what he is adjudged to owe. A criminal conviction and payment of a fine to the state may be atonement to society for the offender. But it may not have a sufficient effect on the conduct of others to make the public policy in favor of punitive damages useful and effective.... We are sympathetic with the innocent victim here; perhaps there is no such thing as money damages making him whole. But his interest in receiving non-compensatory damages is small compared with the public interest in lessening the toll of injury and death on the highways; and there is such a thing as a state policy to punish and deter by making the wrongdoer pay.

307 F.2d at 441–442.

A special concurrence in *McNulty* stated:

All of us are concerned with the high death toll and personal injuries occurring on the highways, but I am somewhat skeptical that the prohibition of insurance against liability for punitive damages will accomplish the results expected by the majority.... If the criminal penalties provided by such statutes fail to deter the wrongdoers, I seriously doubt that closing the market to insurance coverage will do so. As a matter of fact, it is my judgment that the opposite result will follow.

*Id.* at 444.

*Lazenby,* like *McNulty,* involved punitive damages in an automobile negligence case in which the insured tortfeasor was intoxicated. The court, however, was not persuaded that denial of coverage of punitive damages would implement the public policy purposes of punitive damages. It concluded the following:

We, however, are not able to agree the closing of the insurance market, on the payment of punitive damages, to such drivers would necessarily accomplish the result of deterring them in their wrongful conduct. This State, in regard to the proper operation of motor vehicles, has a great many detailed criminal sanctions, which apparently have not deterred this slaughter on our highways and streets. Then to say the closing of the insurance market, in the payment of punitive damages, would act to deter guilty drivers would in our opinion contain some element of speculation.

*Lazenby,* 214 Tenn. at 647, 383 S.W.2d at 5.

Defendant proposes that we construe the contract between Skyline and itself on the basis of the public policy purposes of punitive damages. It is important to note, however, that at issue here is not the public

policy of punitive damages, but whether a public policy exists which prohibits finding coverage of punitive damages in the insurance policy issued to Skyline. In *City of Cedar Rapids* we held that no public policy existed which prevented the construction of an insurance contract as including coverage of punitive damages. 304 N.W.2d at 230.

Our decision, therefore, is based on the harmonization of two competing public policies: the freedom to contract and punitive damages. The freedom of individuals to contract is not taken lightly by this court. Although we do not hesitate to invalidate a contract which contravenes public policy, see *Wunschel Law Firm, P.C. v. Clabaugh*, 291 N.W.2d 331, 335 (Iowa 1980), we also recognize that there is a certain danger in too freely invalidating private contracts on the basis of public policy. This concern is especially valid in the area of insurance contracts: "for a court to undertake to invalidate private contracts upon the ground of 'public policy' is to mount 'a very unruly horse, and when you once get astride it you never know where it will carry you.'" *Harrell v. Travelers Indemnity Co.*, 279 Or. 199, 207, 567 P.2d 1013, 1016 (1978) (quoting 14 Williston on Contracts 7–8, § 1629 (3d ed. 1972)).

Over a century ago the Supreme Court stated in *Waters v. The Merchants' Louisville Insurance Co.*, 36 U.S. (11 Peters) 213, 221, 9 L.Ed. 691, 695 (1837), "There is nothing unreasonable, unjust, or inconsistent with public policy, in allowing the insured to insure himself against all losses from any perils not occasioned by his own personal fraud."

Without doubt, the areas of punitive damages and their ramifications have grown in recent years. "The categories of persons potentially liable have been expanded. The scope of activities that may result in assessment has been enlarged. And, the size of awards has increased." Ellis, *Punitive Damages in Iowa Law,* 66 Iowa L.Rev. at 1005. If the parties wish to contract for coverage of punitive damages, they may. If the insurance companies do not wish to provide such coverage, then they must exclude coverage of punitive damages specifically.

As was pointed out in *Harrell,* 279 Or. at 209–11, 567 P.2d at 1018, business and professional persons, firms and corporations constantly face the perils of punitive damage awards in their daily operation of business. We strongly suspect that the common sense of the insurance purchasing community as a whole would expect their policies to cover all sums—compensatory *and* punitive damages—for which they might become liable, unless the insurance policy specifically excluded punitive damages from coverage.

We realize that the result of our decision is to elevate the public policy of freedom to contract for insurance coverage above the public policy purposes of punitive damages. We do so for two reasons. First, we doubt that ordinary potential tortfeasors make calculations to determine if the expected benefits of a harmful act are outweighed by the potential costs of punitive damages, insured or uninsured. Second, we do not view our decision as totally abrogating the sting of punitive damages. The sting will continue to be felt by the uninsured, the underinsured, and the poor risks who will experience substantial difficulty and high costs in obtaining such insurance.

We have considered all of the contentions raised on this appeal. We hold that Skyline's policy includes coverage of punitive damages, and the public policy purposes of punitive damages do not preclude such a construction. The ruling of the district court is reversed.

REVERSED.