COX v D'ADDARIO

HOOTEN v LATHROP

Docket Nos. 189143, 189795. Submitted March 5, 1997, at Detroit. Decided August 19, 1997, at 9:05 A.M. Leave to appeal sought.

Naomi Cox brought a medical malpractice action in the Wayne Circuit Court against Cottage Hospital Corporation, Stephen P. D'Addario, M.D., and Michael J. Naber, M.D. The court, Pamela R. Harwood, J., granted summary disposition for the defendants, ruling that the plaintiff must arbitrate her medical malpractice claim because she had executed a valid arbitration agreement under the medical malpractice arbitration act (MMAA), MCL 600.5040 *et seq.*; MSA 27A.5040 *et seq.* The plaintiff appealed by leave granted, arguing, among other things, that repeal of the MMAA by 1993 PA 78 and repeal of provisions of the Insurance Code governing the administration and funding of medical malpractice arbitration, MCL 500.3057; MSA 24.13057, by 1993 PA 349 effective October 1, 1995, served to invalidate medical malpractice arbitration agreements entered into before October 1, 1995, where arbitration was not concluded by October 1, 1995.

Rick and Judy Hooten brought a medical malpractice action in the Saginaw Circuit Court against James C. Lathrop, M.D., Saginaw General Hospital, Inc., James M. Tschirhart, M.D., and James M. Tschirhart, M.D., P.C. The court, Lynda L. Heathscott, J., granted summary disposition for the defendants, ruling that the plaintiffs must arbitrate their medical malpractice claim because Mr. Hooten signed a valid arbitration agreement under the MMAA. The plaintiffs appealed, raising the same principal argument made by Cox in her appeal. The appeals were consolidated.

The Court of Appeals *held*:

1. In repealing the MMAA, the Legislature did not intend that all existing arbitration agreements under the MMAA be rendered invalid and unenforceable as of the effective date of the repeal of the MMAA. The Legislature intended to abolish the MMAA procedure prospectively as evidenced by the enactment of 1993 PA 349, which abolished the requirement that hospitals offer arbitration agreements to all patients but provided for funding for arbitration until October 1995.

2. In repealing the Insurance Code provisions governing the administration and funding of medical malpractice arbitration, the Legislature intended to relieve the insurance industry of the burden of funding such arbitration after October 1, 1995, but did not intend to preclude further arbitration under existing MMAA agreements after October 1, 1995, such as arbitration administered by some entity other than Arbitration Services, Inc., and funded by someone other than the arbitration administration fund under the Insurance Code.

3. The public policy of this state favors the enforcement of valid arbitration agreements.

4. Plaintiff Cox, by not raising it in the trial court, failed to preserve for appellate review her claim that defendants Naber and D'Addario are not covered by the arbitration agreement because their negligence preceded the agreement.

5. Naber and D'Addario have standing to compel arbitration because Cox's arbitration agreement with Cottage Hospital covered independent staff doctors who, like Naber, agreed to arbitrate, and Naber invited D'Addario into the arbitration.

6. The trial court in Cox's action did not err in refusing to conduct an evidentiary hearing concerning Cox's claim that the arbitration agreement she signed is not entitled to a presumption of validity under the MMAA because she did not receive a brochure about the arbitration agreement from Cottage Hospital as required by the MMAA.. Affidavits submitted by Cox in support of her claim of nonreceipt were not sufficient to create a factual issue that merited an evidentiary hearing in light of Cox's deposition testimony that she had understood the arbitration agreement and in light of a hospital clerk's affidavit stating that it was the clerk's habit and custom to attach brochures to the arbitration agreements given to patients at the time of registration.

Affirmed.

ARBITRATION — MEDICAL MALPRACTICE ARBITRATION ACT — REPEAL — VALIDITY OF ARBITRATION AGREEMENTS.

The repeal of the medical malpractice arbitration act and of Insurance Code provisions governing the administration and funding of medical malpractice arbitration did not invalidate those medical malpractice arbitration agreements that were validly executed pursuant to the act and under which arbitration was not concluded by October 1, 1995, when funding for such arbitration under the Insurance Code terminated (MCL 500.3057, 600.5040 et seq.; MSA 24.13057, 27A.5040 et seq.; 1993 PA 78; 1993 PA 349).

*Bleakley & McKeen, P.C.* (by *Brian J. McKeen*), for Naomi Cox.

*Lopatin, Miller, Freedman, Bluestone, Herskovic & Heilmann* (by *Richard E. Shaw*), for Rick and Judy Hooten.

*Kerr, Russell and Weber, P.L.C.* (by *Stephen D. McGraw* and *Joanne Geha Swanson*), for Stephen P. D'Addario, Michael J. Naber, and Naber & D'Addario, M.D., P.C.

*Fordney, Dust & Prine* (by *Andrew W. Prine*), for James C. Lathrop, James M. Tschirhart, and James M. Tschirhart, M.D., P.C.

*Kitch, Drutchas, Wagner & Kenney, P.C.* (by *Susan Healy Zitterman* and *Christina A. Ginter*), for Saginaw General Hospital, Inc.

Before: CAVANAGH, P.J., and REILLY and WHITE, JJ.

WHITE, J. These consolidated cases present the question whether arbitration agreements executed pursuant to the medical malpractice arbitration act (MMAA), MCL 600.5040 *et seq.*; MSA 27A.5040 *et seq.*, are invalidated retroactively by the repeal of the MMAA and of Chapter 30A of the Insurance Code of 1956, MCL 500.3051 *et seq.*; MSA 24.13051 *et seq.*, in cases where arbitration proceedings were not concluded by October 1, 1995, the effective date of the repeal of the statute that funded the arbitration administration fund (AAF), MCL 500.3057; MSA 24.13057.

Relying heavily on an Attorney General opinion, plaintiffs argue that the repeal of the MMAA and of the provisions of the Insurance Code governing the administration and funding of medical malpractice

arbitrations resulted in an absence of statutory authority to compel medical malpractice arbitration. In Docket No. 189143, plaintiff additionally argues that the circuit court erred in granting defendants' motion for summary disposition and compelling arbitration without an evidentiary hearing on the issue whether she received an information brochure at the time she executed the arbitration agreement.

We affirm in both cases,[1] concluding that the Legislature contemplated the continued arbitration of cases under existing agreements when it repealed the MMAA, and that the repeal of the provisions of the Insurance Code does not render the agreements unenforceable because the MMAA contemplated a means of arbitration that is not dependent on the funding and administration provisions of the Insurance Code.

I

DOCKET NO. 189795

Plaintiff Rick Hooten[2] signed an arbitration agreement with defendant Saginaw General Hospital on January 29, 1993, when he went to the hospital for blood work before scheduled surgery. The arbitration agreement provided that if the hospital and plaintiff could not agree on the three panel members, the American Arbitration Association (AAA) would appoint

---

[1] In Docket No. 189795, the circuit court concluded that the repeal of the statutes did not preclude alternative means to arbitrate the case. In Docket No. 189143, the circuit court did not reach the issue because, as defendants note, plaintiff raises for the first time on appeal the issue that the repeal of the statutes renders the arbitration agreement invalid.

[2] The circuit court file misspells plaintiffs' last name as "Hooten," probably because plaintiffs' original complaint spelled the name that way. Plaintiffs' subsequent pleadings spell their last name as Hooton, and plaintiff's signature on the agreement to arbitrate is spelled Hooton.

the panel members, and that Michigan laws and the rules of the AAA would apply to all arbitration hearings.

Plaintiff had surgery at Saginaw General on February 9, 1993, and on March 31, 1994, filed a medical malpractice suit. On December 14, 1994, defendants filed a motion for summary disposition or, in the alternative, to compel arbitration.[3] The circuit court granted defendants' motion at a January 23, 1995, hearing.[4] No order was entered, however.

After two motions for reconsideration based on arguments not at issue here were filed and denied, and Dr. James M. Tschirhart and his professional corporation were added and dismissed pursuant to the arbitration agreement, plaintiff filed a third motion for reconsideration raising the issue presented here. This motion, filed on September 5, 1995, sought reinstatement of the case with respect to all defendants, arguing that pursuant to an Attorney General opinion, OAG 1995-1996, No 6866, p 87 (August 22, 1995), Arbitration Services, Inc., (ASI) did not have authority to continue to arbitrate cases under Chapter 30A of the Insurance Code of 1956 after October 1, 1995; that plaintiffs' case was scheduled for arbitration in November 1995; and that because plaintiffs' case

---

[3] Plaintiffs' response to the motion argued that the arbitration agreement plaintiff signed applied only to the specific hospital visit that occurred on January 29, 1993, during which plaintiff had blood work done, and not to his subsequent hospital stay beginning on February 9, 1993. In his appellate brief, plaintiff included in his statement of facts that when he entered Saginaw General Hospital for the surgery in February 1993, no arbitration agreement was presented to him. However, plaintiff does not brief this issue in his appellate brief and we therefore do not address it.

[4] The circuit court concluded that "the agreement signed before surgery relates forward to the surgery itself."

could not be arbitrated before the operative date, the arbitration agreement did not divest the circuit court of jurisdiction to hear plaintiffs' claims.

All defendants argued in response to plaintiffs' motion for reconsideration that "there were alternative ways to proceed with the arbitration." Dr. Lathrop further argued that the Attorney General opinion did not state that all arbitrations must cease on October 1, 1995, that the Attorney General opinion addressed only those arbitrations conducted through the mechanisms established under Chapter 30A of the Insurance Code, and that the arbitration agreement made no reference to ASI.

The circuit court denied plaintiffs' motion for reconsideration.[5]

DOCKET NO. 189143

Plaintiff Naomi Cox signed an arbitration agreement with Cottage Hospital on August 15, 1991. The agreement provided that if the parties could not agree on the panel members, "the administrative agency may appoint the panel members," and that Michigan laws and "the rules of the Arbitration System will apply to all arbitration hearings." Plaintiff filed a medical malpractice suit on July 20, 1993.

---

[5] The court ruled:

Now the plaintiff comes before the court for the third time, asking for reconsideration, and states as a novel circumstance, the fact that the state's contract with Arbitration Services, Inc. will be cancelled on October 1, 1995.

Notwithstanding the fact that ASI may no longer be available to the parties in this case, this court finds that there are alternative means to arbitration and there is no reason for the court to reconsider or reverse its order.

Cottage Hospital filed a motion for summary disposition, arguing that the arbitration agreement should be enforced and arbitration compelled.[6] The individual defendants later joined in the hospital's motion. Plaintiff's various challenges to the validity of the arbitration agreement were rejected by the circuit court, and the case was dismissed.[7]

II

A

The MMAA, MCL 600.5040 *et seq.*; MSA 27A.5040 *et seq.*, was enacted in 1975 in response to a medical malpractice crisis.

MCL 600.5040; MSA 27A.5040 provided that the provisions of the MMAA were applicable to the arbitration of disputes arising out of or resulting from an error, omission, or negligence in the performance of professional health-care services by a hospital, health-care provider, or their agent. MCL 600.5040(1); MSA 27A.5040(1). The MMAA required that arbitration agreements contain certain provisions.[8] The statute pro-

---

[6] Cottage Hospital was dismissed during the pendency of this appeal.

[7] Plaintiff argued that she impliedly revoked the arbitration agreement when she filed her complaint, that the running of the sixty-day period for revoking the agreement was tolled because, following her discharge from Cottage Hospital, she spent sixty days in rehabilitation, that she was physically and mentally unable to comprehend her rights and exercise them until she filed her complaint, that an information brochure did not accompany the arbitration agreement, and that Cottage Hospital had waived its contractual right to invoke arbitration by filing motions and participating "in almost every litigious activity" for two years before seeking to arbitrate.

[8] The requirements included notice that the agreement could be revoked by the health-care recipient within sixty days after execution, and that the execution of the agreement was not a prerequisite to health-care treatment. MCL 600.5041(2), (3), (5), (6); MSA 27A.5041(2), (3), (5), (6) and MCL 600.5042(2), (3), (5), (6); MSA 27A.5042(2), (3), (5), (6). The health-care provider or hospital was further required to provide the per-

vided that an agreement to arbitrate that included the required provisions was presumed valid. MCL 600.5041(7); MSA 27A.5041(7), MCL 600.5042(8); MSA 27A.5042(8). The MMAA also set forth procedures to be followed in the arbitration, MCL 600.5044; MSA 27A.5044, and mandated that the claimants' expenses be defrayed by the AAF established under the Insurance Code, or be provided by the respondent parties. MCL 600.5044(1); MSA 27A.5044(1).

Administration of medical malpractice arbitrations was to be conducted by an "Association," which the MMAA defined as "the American arbitration association [AAA] or other entity organized to arbitrate disputes pursuant to this chapter." MCL 600.5040(2)(a); MSA 27A.5040(2)(a). In the event that the parties to an arbitration agreement could not agree on a panel of three arbitrators, the association was authorized to appoint the panelists regarding whom agreement was not reached. MCL 600.5044(2)-(5); MSA 27A.5044(2)-(5). Apparently, sometime around the late 1980s, AAA's contract was discontinued and ASI became the administrator.

Chapter 30A of the Insurance Code of 1956 provided for an arbitration advisory committee within the Insurance Bureau and promoted the use of arbitration agreements by health-care providers and hospitals through regulation of medical malpractice insurers and their policy forms. MCL 500.3051 *et seq.*; MSA 24.13051 *et seq.* Chapter 30A gave the Commissioner of Insurance authority to approve model arbitration agreement forms and information brochures

---

son receiving health care with an information brochure clearly detailing the agreement and the revocation provision. MCL 600.5041(6); MSA 27A.5041(6), MCL 600.5042(7); MSA 27A.5042(7).

consistent with the MMAA. MCL 500.3060; MSA 24.13060. Chapter 30A also created the AAF to defray the expenses of the advisory committee and the administrative expenses of the number of arbitration proceedings projected for the particular year, including the amount that would otherwise be payable by a claimant as a party to a proceeding and the costs of the arbitrators. MCL 500.3057; MSA 24.13057.

The Legislature repealed the MMAA in 1993 PA 78 as part of a series of "tort reform" measures, which included limiting the amount of noneconomic damages recoverable by plaintiffs in medical malpractice actions, requiring 182-days' notice before a medical malpractice action can be commenced, requiring a response to that notice within 154 days, requiring each party to give the other access to related medical records in the party's control, amending provisions regarding affidavits of merit and meritorious defense, revising the statute of limitations for certain medical malpractice claims, requiring parties settling a medical malpractice action to file a copy of the settlement agreement with the Department of Commerce, and other provisions pertaining to burden of proof, waiver of a plaintiff's physician-patient privilege, and interest on judgments. The measures also included a provision permitting voluntary binding arbitration of medical malpractice actions involving damages of $75,000 or less, MCL 600.2912g; MSA 27A.2912(7), and repeal of the MMAA.

Another act, 1993 PA 349, amended a number of sections of Chapter 30A of the Insurance Code, including the funding statute, MCL 500.3057; MSA 24.13057, effective January 10, 1994. This act provided for reduced assessments on insurance companies

after October 1, 1994.[9] The Senate Fiscal Agency bill analysis of 1993 PA 349 included the following:

---

[9] The amended portions are underlined:

Sec. 3057. (1) There is created within the [Insurance] bureau an arbitration administration fund. Except as provided in subsection (5), the arbitration administration fund shall be annually funded by order of the commissioner in such amount as shall be sufficient to defray the actual expenses of the advisory committee and the administrative expense of the projected number of arbitration proceedings for that year.

(2) The administrative expense shall include the amount that would otherwise be payable by a claimant as a party to a proceeding together with the costs of arbitrators.

(3) The administrative expense may also include a provision for a consulting contract with the American arbitration association or similar agency for a limited and reasonable amount of technical and organizational advice and consultation in the implementation of this chapter.

(4) For the privilege of doing business in this state every insurer offering malpractice insurance to a hospital or health care provider in this state shall remit to the arbitration administration fund the amount . . . designated by the commissioner pursuant to this section. The commissioner shall allocate a projected cost among malpractice insurers on a pro rata basis according to premium volume and such other relevant factors as the commissioner may designate by rule.

(5) Any money remaining in the arbitration administration fund as of September 30, 1994 shall be carried forward for use in the fiscal year beginning October 1, 1994. For the fiscal year beginning October 1, 1994, the commissioner shall not assess pursuant to this section against insurers offering malpractice insurance to hospitals or health care providers in the state an amount that together with the amount remaining in the arbitration administration fund as of September 30, 1994 will exceed $250,000.00. Assessments made after October 1, 1994 shall be made on a quarterly basis and shall be assessed against only those insurers that annually write $1,000,000.00 or more in medical insurance premiums. If the commissioner finds that there are insufficient funds to meet the requirements of this subsection, the commissioner shall make his or her finding in writing and, after notice to and an opportunity for comment by the assessed insurers, the commissioner may make a supplemental assessment in an amount equal to the amount necessary to meet the requirements of this subsection. The amount assessed under this subsection and money in the arbitration administration fund shall be used solely for the actual costs of administering arbitration proceedings under this chapter. Any supplemental

*Supporting Argument*

Since the provisions of the Revised Judicature Act that regulate health care arbitration actions have been repealed, it is only fair that efforts be made to phase out the assessments on insurers to pay for costs of arbitration proceedings. The bill would give insurers relief from the annual assessments, yet ensure that there would be enough in the Fund to pay the administrative costs of any remaining arbitration cases. [Senate Analysis, SB 716, April 20, 1994.]

In addition to amending the funding provision, 1993 PA 349 provided for the repeal of MCL 500.3051-500.3062; MSA 24.13051-24.13062, including the funding provision, effective October 1, 1995. 1993 PA 349, § 3.

B

On August 22, 1995, the Attorney General issued an opinion entitled Continued Arbitration of Medical Malpractice Cases Under Chapter 30A of the Insurance Code of 1956, OAG, 1995-1996, No 6866, p 87 (August 22, 1995), which concluded:

Arbitration Services Inc., the entity that administers the arbitration of medical malpractice cases on behalf of the Insurance Bureau, does not have the authority to continue to arbitrate cases under Chapter 30A of the Insurance Code of 1956 after October 1, 1995.

The Insurance Bureau may not continue to fund the activities of Arbitration Services Inc., after October 1, 1995.

The Legislature did not intend to provide for the arbitration of medical malpractice cases under Chapter 30A of the Insurance Code of 1956 after October 1, 1995.[10]

---

assessment finding by the commissioner under this subsection is directly appealable to the circuit court for Ingham county.

[10] The opinion stated:

Opinion No. 6866

Honorable John T. Llewellyn State Representative The Capitol Lansing, Michigan

You have asked several questions concerning the effect on pending arbitration cases of the repeal of the R. Hood-McNeely-Geake Malpractice Arbitration Act of 1975 (Act), MCL 600.5040 *et seq;* MSA 27A.5040 *et seq,* and Chapter 30A of the Insurance Code of 1956, MCL 500.3051 *et seq;* MSA 24.13051 *et seq.*

It may be helpful to review the statutory background before answering your questions. The Act added Chapter 50A to the Revised Judicature Act of 1961, MCL 600.101 *et seq;* MSA 27A.101 *et seq.* Sections 5041 and 5042 stated that health care providers and hospitals could offer patients, on a voluntary basis, an agreement to arbitrate any disputes that might arise as a result of the treatment given. The patient had the right to revoke the arbitration agreement within 60 days after execution by the health care provider or discharge by the hospital. Section 5044 provided that the administrative cost of the arbitration would be defrayed by the arbitration administration fund established by the Legislature in the Insurance Code of 1956, MCL 500.100 *et seq;* MSA 24.1100 *et seq.*

Section 2 of 1993 PA 78 repealed the Act. In its place, 1993 PA 78 amended several existing statutes to place a cap on damage awards in medical malpractice cases as well as establishing different procedures of the handling of medical malpractice claims. In addition, it added section 2912g to the Revised Judicature Act of 1961 to allow for the voluntary arbitration of claims of $75,000.00 or less. While section 3 of 1993 PA 78 stated that the repeal of the Act was effective October 1, 1993, section 5 stated that it would not become effective until several other acts became effective, which occurred on April 1, 1994.

The arbitration administration fund mentioned in section 5044 of the Act was established by section 3057 of Chapter 30A which was added to the Insurance Code of 1956 by 1975 PA 141. Section 3053 of Chapter 30A required malpractice insurers to place in their policies a requirement that hospital insureds offer an arbitration agreement to each patient treated or admitted. Under Chapter 30A Arbitration Services Inc., administers the arbitration of medical malpractice cases on behalf of the Insurance Bureau. Section 3(2) of 1993 PA 349 repealed Chapter 30A, including the arbitration administration fund established in section 3057 effective October 1, 1995.

*You first ask if Arbitration Services Inc., the entity that administers the arbitration of medical malpractice cases on behalf of the Insurance Bureau, has the authority to continue to arbitrate cases under Chapter 30A of the Insurance Code of 1956 after October 1, 1995.*

In 1993 PA 349 the Legislature has repealed Chapter 30A of the Insurance Code of 1956 effective October 1, 1995. Once a statute is repealed, it is as if it never existed. *Bejger* v *Zawadzki,* 252 Mich

Pursuant to the Attorney General opinion, Commissioner of Insurance D. Joseph Olson sent a letter to ASI, dated August 31, 1995, canceling ASI's contract effective October 1, 1995, and directing ASI to notify disputants that the program would not be available to resolve disputes after September 30, 1995.

---

14, 19; 232 NW 746 (1930). Thus, on October 1, 1995, there will be no statutory authority for Arbitration Services, Inc., to continue to arbitrate cases that had previously been filed.

It is my opinion, therefore, in answer to your first question, that Arbitration Services Inc., the entity that administers the arbitration of medical malpractice cases on behalf of the Insurance Bureau, does not have the authority to continue to arbitrate cases under Chapter 30A of the Insurance Code of 1956 after October 1, 1995.

*You next ask if the Insurance Bureau may continue to fund the activities of Arbitration Services Inc., after October 1, 1995.*

Chapter 30A of the Insurance Code of 1956 is repealed effective October 1, 1995. Section 3057 of Chapter 30A created the arbitration administration fund. An administrative agency has only those statutory powers conferred upon it by the Legislature. *Coffman v State Bd of Examiners*, 331 Mich 582, 590; 50 NW2d 322 (1951). Thus, on October 1, 1995, the Insurance Bureau will be without any statutory authority to fund the activities of Arbitration Services Inc.

It is my opinion, therefore, in answer to your second question, that the Insurance Bureau may not continue to fund the activities of Arbitration Services Inc., after October 1, 1995.

*Your third inquiry asks if the Legislature intended to provide for the arbitration of medical malpractice cases under Chapter 30A of the Insurance Code of 1956 after October 1, 1995.*

The Legislature did not include any savings clause in 1993 PA 349 allowing for the completion of arbitration cases that were filed before October 1, 1995, under Chapter 30A of the Insurance Code of 1956. The Legislature also added section 2912g to the Revised Judicature Act of 1961 to provide for the voluntary arbitration of medical malpractice claims without the Insurance Bureau being involved. The Legislature did not enact any statutory provisions authorizing the continued arbitration of medical malpractice cases under Chapter 30A of the Insurance Code of 1956 after October 1, 1995.

It is my opinion, therefore, in answer to your third question, that the Legislature did not intend to provide for the arbitration of medical malpractice cases under Chapter 30A of the Insurance Code of 1956 after October 1, 1995. [Emphasis added.]

III

A

We conclude that the arbitration agreements at issue are not rendered invalid by the repeal of the MMAA and the funding and implementation provisions of Chapter 30A of the Insurance Code.

In arguing that arbitration agreements executed under the MMAA are rendered invalid by the repeal of these statutes where arbitration proceedings had not concluded by October 1, 1995, plaintiffs rely on the Attorney General opinion (see note 10, *supra*). Although an opinion of the Attorney General is binding on state agencies and officers, such opinions do not have the force of law and are not binding on the courts. *Oakland Prosecutor v Dep't of Corrections*, 199 Mich App 681, 691; 503 NW2d 465 (1993). Further, we note that the Attorney General opinion does not directly address the issue whether agreements executed in conformance with the MMAA are rendered invalid by the repeal of the MMAA and the funding statute where other means of payment and administration are available.

The primary rule of statutory construction is to determine and effectuate the intent of the Legislature through reasonable construction, considering the purpose of the statute and the object sought to be accomplished. *Sun Valley Foods Co v Ward (After Remand)*, 221 Mich App 335, 338; 561 NW2d 484 (1997). Where a statute is unambiguous, judicial construction is precluded. If judicial interpretation is necessary, the statutory language is to be given the reasonable construction that best accomplishes the purpose of the statute. *Id.*

B

We first address the question whether the Legislature, in repealing the MMAA as part of 1993 PA 78, the comprehensive tort reform measure, intended that all existing arbitration agreements under the MMAA be rendered invalid and unenforceable as of the effective date of the repeal of the MMAA. We conclude that the Legislature did not so intend. Rather, the repealer was intended to abolish the MMAA procedure prospectively. After the effective date, the procedure for entering into medical malpractice arbitration agreements as set forth in the MMAA was no longer available, and new arbitration agreements could not be entered into under the statute. The conclusion that the Legislature did not intend the repeal of the MMAA to retroactively invalidate existing agreements is supported by the Legislature's enactment of 1993 PA 349, which repealed MCL 500.3053; MSA 24.13053 (requiring insurers to require hospitals to offer arbitration agreements to all patients), but amended § 3057 to provide for funding for arbitrations throughout 1994 and until October 1995. 1993 PA 349 clearly contemplated that arbitrations under MMAA agreements would continue after the repeal of the MMAA.

C

We turn next to the question whether the pertinent provisions of 1993 PA 349 evince a legislative intent that MMAA arbitrations cease effective October 1, 1995. We conclude that the provisions were addressed to the funding of MMAA arbitrations through the insurance industry, and that the Legislature did not intend to prohibit arbitration under valid MMAA agreements

where the responding parties pay the claimant's cost and the AAA acts as administrator.

The language of the repealing act, 1993 PA 349, § 3, does not purport to retroactively invalidate arbitration agreements entered into, but not concluded, before October 1, 1995:

> Section 3. (1) Section 3053 of Act No. 218 of the Public Acts of 1956, being section 500.3053 of the Michigan Compiled Laws, is repealed.
>
> (2) Chapter 30a of Act No. 218 of the Public Acts of 1956, being sections 500.3051 to 500.3062 of the Michigan Compiled Laws, is repealed effective October 1, 1995.

The same act that repealed the statute effective October 1, 1995, amended it to provide that any money remaining in the AAF as of September 30, 1994, shall be carried forward for use in the fiscal year beginning October 1, 1994, and to limit the assessments on insurance companies for the fiscal year. It appears that the Legislature intended that AAF funding be available to complete the arbitration of cases then pending, until October 1, 1995, when AAF funding would cease. The legislative analysis of 1993 PA 349 states: "The bill would give insurers relief from the annual assessments, yet ensure that there would be enough in the [AAF] Fund to pay the administrative costs of any remaining arbitration cases." We conclude that the Legislature's intent in enacting the repealer provision was that the insurance industry no longer be burdened with the cost of arbitrations after October 1, 1995.

It is a separate question whether the Legislature intended by the repeal of the funding and administration provisions of section 30A to preclude all further

arbitration under existing MMAA agreements after October 1, 1995. We conclude that it did not.

The MMAA, which was part of the Revised Judicature Act rather than the Insurance Code, provided a means for paying the claimant's administrative costs other than through the AAF under the Insurance Code:

> The administrative costs on account of a claimant shall be defrayed by the arbitration administration fund established under the insurance code *or shall be provided by the respondent parties.* [MCL 600.5044(1); MSA 27A.5044(1) (emphasis added).]

The MMAA also provided for the administration of arbitrations by the AAA, MCL 600.5040(2)(a); MSA 27A.5040(2)(a), and the plain and unambiguous terms of the arbitration agreements at issue here include no requirement regarding the existence, funding, or participation of ASI. 1993 PA 349, however, only addresses the funding and administration of arbitrations through the provisions of Chapter 30A of the Insurance Code. It does not address respondent funding or arbitration administration by the AAA, an entity not funded by the AAF and insurance industry assessments.

We conclude that the arbitration agreements are enforceable because they were valid under the MMAA, neither the statute repealing the MMAA nor the statute terminating funding for the AAF expresses a legislative intent to abrogate or invalidate existing arbitration agreements, the repeal of the funding statute does not by implication mandate the invalidation of all unexecuted agreements because an alternative funding method is found in the MMAA, and the public policy of

this state favors the enforcement of valid arbitration agreements.

The circuit courts properly ordered the instant cases to arbitration. The repeal of the MMAA and the repeal of the arbitration administration funding statute do not render invalid arbitration agreements executed before the repeal of the MMAA where the agreements conform to the MMAA, the respondents pay for the claimants' costs, and the AAA administers the proceeding. We affirm the circuit courts' orders compelling arbitration providing that these conditions are met.

IV

During oral argument, plaintiff Cox asserted that defendants Naber and D'Addario are not covered by the arbitration agreement because they had nothing to do with the 1991 procedure covered by the arbitration agreement, the arbitration agreement states that it applies to future claims, and their negligence preceded the arbitration agreement. However, plaintiff did not assert in the circuit court that her complaint includes claims that are not subject to arbitration because they preceded the arbitration agreement. Nor was this issue raised in plaintiff's brief on appeal. Rather, the issue was raised for the first time during oral argument, where plaintiff erroneously asserted that the issue had been preserved, and was impliedly raised in one sentence in plaintiff's supplemental brief, which addressed the separate issue discussed in section V, *infra*. We thus conclude that this issue has been waived.

V

In a supplemental brief filed on leave granted, plaintiff Cox argues that defendants were invited to join in the arbitration by Cottage Hospital and that, because Cottage Hospital is no longer a party to this case, defendants have no standing in their own right to compel arbitration, and the circuit court's order compelling arbitration should be reversed.

Defendants' brief in response to plaintiff's supplemental brief included as an exhibit an independent health-care provider arbitration agreement between Cottage Hospital and Dr. Naber. Plaintiff's arbitration agreement covered independent staff doctors who agreed to arbitrate. Thus, Dr. Naber is covered by the agreement. Defendants further argue that Dr. Naber, and not Cottage Hospital, invited Dr. D'Addario into arbitration. Under these circumstances, we reject plaintiff's claim that defendants Naber and D'Addario have no standing to compel arbitration.

VI

Plaintiff Cox also argues that, in the absence of an evidentiary hearing regarding her allegation that no information brochure accompanied the arbitration agreement, the circuit court's finding that the arbitration agreement was valid constitutes palpable error. We disagree. The circuit court permitted plaintiff to raise the new issue of the brochure at a hearing on defendants' motion on October 28, 1994, and requested supplemental briefs. In support of her claim, plaintiff presented her own affidavit stating that she did not recall seeing or being in possession of "any type of booklet" regarding arbitration. Plaintiff also presented an affidavit of a friend who stated

that she accompanied plaintiff to the hospital on the pertinent day and took plaintiff's possessions home after plaintiff suffered a stroke. The friend's affidavit stated that she did not see plaintiff in possession of any type of booklet regarding arbitration.

Defendants submitted an affidavit of the hospital clerk who obtained plaintiff's signature on the arbitration agreement, which stated that although she did not independently recall plaintiff, it was her habit and custom to give patients the arbitration agreement for execution at the time of registration and that each agreement was attached to an information brochure. Defendants submitted the arbitration agreement, which contained a statement directly above plaintiff's signature indicating plaintiff had received the brochure.

The circuit court, in its opinion and order granting defendants' motion, concluded that plaintiff's affidavits did not create a disputed issue of fact regarding receipt of the brochure, because they did not contradict plaintiff's deposition testimony that she had received, read, understood, and signed the agreement on August 15, 1991, nor did they contradict the hospital clerk's custom-and-habit evidence. The circuit court noted that plaintiff did not request an evidentiary hearing in her supplemental brief on this issue, but that if a factual issue had been established, it would have scheduled such a hearing.

We conclude that the circuit court did not err in failing to hold a hearing. Defendants had the initial burden of going forward with evidence establishing that the arbitration agreement was executed in strict compliance with the MMAA. *McKinstry v Valley Obstetrics-Gynecology Clinic, PC*, 428 Mich 167, 181; 405

NW2d 88 (1987). The statutory presumption of validity accrues once the defendant offers evidence showing:

> (1) A written arbitration agreement complying with the provisions of the MMAA has been signed by the person receiving health care or treatment or his legal representative;
>
> (2) The arbitration agreement provides that the offer to arbitrate, if accepted by the patient, must be revocable in writing for sixty days;
>
> (3) The arbitration agreement states, above the signature line in twelve-point boldface type: "THIS AGREEMENT TO ARBITRATE IS NOT A PREREQUISITE TO HEALTH CARE OR TREATMENT AND MAY BE REVOKED WITHIN 60 days after execution by notification in writing to _____";
>
> (4) The patient has been given a booklet detailing the specific provisions of the arbitration agreement;
>
> (5) The patient has been given a copy of the arbitration agreement; and
>
> (6) The offer to arbitrate did not precede the provision of emergency care. [*Id.* at 181.]

If the trial court determines that the arbitration agreement itself complies with the provisions of the MMAA and that other independent evidence demonstrates that the patient has been given a copy of the agreement and the booklet in a nonemergency setting, the agreement to arbitrate must be presumed valid. *Id.* at 181. Once a showing is made giving rise to the presumption, it will stand unless rebutted by evidence that either demonstrates noncompliance with the statutory requirements or establishes one or more defenses, such as coercion, mistake, duress, or fraud. *Id.* Evidence a defendant might present to sustain its ultimate burden of persuasion includes proof of the

habit of a person or of the routine practice of an organization. *Id.* at 181-182.

In the instant case, defendants presented the evidence required under *McKinstry* by submitting the arbitration agreement, which included the provisions required under the MMAA, and the hospital clerk's affidavit regarding her habit and custom, which also stated that the information brochures were attached to the arbitration agreements. The statutory presumption of validity arose at this point, and plaintiff had the burden of rebutting that presumption with evidence of noncompliance. The court examined plaintiff's affidavits and concluded that, in light of plaintiff's deposition testimony, they did not create a question of fact requiring an evidentiary hearing.

We conclude that on this record, the court was not obliged to hold an evidentiary hearing.

Affirmed.